509 So.2d 69 (1987)
Laverne WALLACE
v.
SLIDELL MEMORIAL HOSPITAL, et al.
No. 86 CA 0479.
Court of Appeal of Louisiana, First Circuit.
May 27, 1987.
*70 G. Brice Jones, Slidell, for plaintiff-appellee.
Louis M. Kiefer, Jr., Metairie, for Gibbs Const. Co. Inc., and Employers Ins. of Wausau, defendants-appellants.
Debra A. Templet, Baton Rouge, for Slidell Memorial Hosp., defendants-appellants.
Before LOTTINGER, SHORTESS and CARTER, JJ.
*71 SHORTESS, Judge.
Laverne Wallace (plaintiff) was injured as the result of a fall in the parking lot of Slidell Memorial Hospital on January 28, 1984. She filed suit against St. Tammany Parish Hospital Service District No. 2, d/b/a Slidell Memorial Hospital (SMH), Gibbs Construction Company, Inc. (Gibbs), the contractor who was renovating SMH at the time of her injury, and Employers Insurance of Wausau, A Mutual Company (Wausau), Gibbs' liability insurer.[1] Plaintiff alleged that defendants failed to properly maintain the parking lot, failed to properly light the area, and failed to properly warn of or barricade the dangerous area where she fell. Gibbs and Wausau filed a third party demand against SMH, alleging that maintenance of the parking lot and lighting were SMH's responsibility, and SMH in turn filed a third party demand against Gibbs and Wausau asserting its right to indemnification under the construction contract.
The trial court found that there was a defect in the SMH premises and that SMH and Gibbs were "concurrently negligent."[2] Judgment was rendered in favor of plaintiff and against defendants in the sum of $103,936.23, reduced by 10% because of plaintiff's contributing negligence to the sum of $93,542.61. Judgment was further rendered on SMH's third party demand in its favor and against Gibbs and Wausau on their third party demand. All defendants have appealed.
Laverne Wallace, a resident of California, came to Slidell to visit her sister, a terminal cancer patient at SMH. SMH was being renovated at that time by Gibbs. Parking at the hospital was "helter-skelter," and the parking lot was in poor condition. Plaintiff had been visiting her sister for eleven days prior to the accident, parking wherever space was available. Plaintiff testified that on the date of the accident she could not find a parking place where she usually parked, so she parked in the only place she could find, perpendicular to the front of the hospital.
Plaintiff testified that the accident occurred in the following manner. When she left the hospital at approximately 8:15 p.m., she walked out of the hospital, turned left on the sidewalk, and followed the sidewalk until it began to curve. The parking lot was very dark, but she could see light reflecting off the top of her white car, straight ahead of her. She stepped off the sidewalk to take the shortest route to her car, walking over stones or mud until she was several steps from her car. She then stepped into a hole with her right foot and fell. She attempted to catch herself with her right hand, but her head struck the ground, rendering her unconscious. When she regained consciousness, she walked back to the hospital, where her head and wrist were treated in the emergency room.
Defendants contend the trial court erred in finding the SMH premises defective and in finding that defendants were negligent. The trial court's findings had two bases: (1) failing to properly light the parking area; and (2) allowing the hole to exist without either correcting it or protecting those using the lot by either warning of its existence or barricading the area.

LIABILITY
Defendants contend the trial court was clearly wrong in finding that the lighting in the parking area was inadequate. David Alligood, a maintenance worker at SMH, testified that there were two lights on the side of the building and a light standard in the parking lot. However, he did not know if these lights were burning on the night of January 28, 1984. He testified that at the time of the accident hospital security reported any lighting problems to maintenance, who replaced burned out bulbs or ordered new bulbs if none were in *72 the hospital's stock. There was no night maintenance shift at the time of the accident; however, there was a man on call. Plaintiff testified that there was some source of light which reflected off the top of her white car, but other than that "[i]t was black." Cindy Hebert, the hospital's adjuster, testified that when she went to the scene with plaintiff about two weeks after the accident, she could find no overhead lights in the parking lot that would shine down to the parking line. We find that the trial court's holding that the lighting was inadequate is supported by the record and is not clearly wrong.
Defendants further contend that the area where plaintiff fell was "a little low, but ... not a hole" and thus was not unreasonably dangerous. Plaintiff testified that the area was "a great big hole with potholes within the hole." The photos introduced at trial show a dirt area slightly lower than the sidewalk with numerous depressions. The degree to which a danger may be observed by a potential victim is one factor in the determination of whether the condition is unreasonably dangerous. Haney v. General Host Corp., 413 So.2d 624 (La.App. 1st Cir.1982); Smith v. Hartford Accident & Indemnity Co., 385 So.2d 858 (La.App. 1st Cir.1980). We find that in this case, the inadequate lighting made it impossible for a potential victim to see the depressions, thus rendering the area unreasonably dangerous.
Each of the defendants assigns as error the finding of fault against it. SMH contends that if the area where plaintiff fell was unreasonably dangerous, it was the sole fault of Gibbs because the area was still under construction. Gibbs, on the other hand, contends that any fault for the condition of the area is solely attributable to SMH because the area had been accepted by the hospital.
Plaintiff fell in an area which was adjacent to a concrete apron joining the old and new parking areas. The concrete had been poured in early October, 1983, by Dragon, Ltd., Gibbs' subcontractor, but because it was aesthetically defective, i.e., the curve was irregular, corrective work was ordered. The adjacent area where plaintiff fell had been improperly backfilled, but the corrective backfill work was not planned until after the concrete work was complete.
Although the concrete work and backfill in the apron area had not been completed, Jeffrey Cohen, architect for the hospital, accepted the parking areas as "serviceable by the Owner for the use for which they are intended" on December 9, 1983, subject to a punch list of items to be corrected or completed. The defective concrete in the apron area was included in the punch list and was finally corrected in April, 1984, by the addition of a suitable curb.
In the meantime, the hospital began using the parking areas. Cohen's letter to Gibbs of December 9, 1983, lists the date of first use of the parking area "[i]n front of Boiler Room," which included the apron area, as October 17, 1983. Roy Barnes, SMH's Clerk of Works, testified that SMH maintenance workers striped the parking lot to suit hospital needs on November 19, 1983. Barnes further testified that all of the barricades were removed from this area when it began to be used.
Section 02200 of the Project Manual for the additions to SMH, page 02200-2, provides the following measures for the protection of persons and property: "Barricade open excavations occurring as part of this work and post with warning lights. Operate warning lights as recommended by authorities having jurisdiction."[3] All witnesses testified that this area was not barricaded or posted with warning lights.
Gibbs contends it no longer had a duty to barricade the area after it received the letter of December 9 from Cohen because that area had passed to the control of SMH. However, that letter was not a final acceptance but included a punch list of necessary corrections. According to § 01700 of the Project Manual, page *73 01700-3, final acceptance could not be given until completion of the punch list items and reinspection by the architect. Gibbs was obligated to correct the concrete and backfill defects at the time plaintiff was injured, and the trial court was not clearly wrong in finding that Gibbs was negligent in failing to barricade the area.
SMH contends that Gibbs' failure to barricade was the sole cause of plaintiff's accident, and thus the trial court erred in finding that it was negligent. However, the owner of immovable property has a duty to keep such property in a reasonably safe condition. The owner must discover any unreasonably dangerous condition on the premises and either correct the condition or warn potential victims of its existence. Carter v. Board of Supervisors of Louisiana State University, 459 So.2d 1263 (La.App. 1st Cir.1984), writ denied, 462 So.2d 1248 (La.1985); Farr v. Montgomery Ward & Co., 430 So.2d 1141 (La.App. 1st Cir.), writ denied, 435 So.2d 429 (La.1983). SMH knew that the apron area was not complete. Roy Barnes, SMH's construction supervisor, testified that the problems with this area were discussed at the monthly construction meetings. Yet, SMH either removed or acquiesced in the removal of the barricades. Thus, we find no manifest error in the trial court's holding that SMH was negligent.
Defendants also contend the trial court erred in limiting its finding of plaintiff's negligence to 10%. Plaintiff testified that she felt "pretty secure" taking the shortest route to her car, but she admitted she was distracted by thoughts of her dying sister. In view of the degree of negligence of Gibbs and SMH discussed above, we do not find the trial court erred in apportioning plaintiff's fault at 10%.

QUANTUM
Defendants further contend the trial court abused its discretion in awarding total damages to plaintiff of $103,936.23, which included $30,000.00 for pain and suffering, $5,593.23 for medical expenses, and $68,343.00 for past lost wages and loss of future wages. More specifically, defendants contend that the awards for pain and suffering and for future economic loss are excessive.
Plaintiff sustained a comminuted intra-articular Colles' fracture of her right wrist and a contused right eyebrow. Closed reduction of the wrist fracture was attempted unsuccessfully in the emergency room. She then underwent reduction surgery under general anesthesia with placement of an external fixator device. This entailed the placement of four pins into the bones of her hand and wrist which were connected by a metal detracting device outside the skin. This device remained on her wrist for seven weeks. She took pain medication for approximately four months, and she continues to experience intermittent chronic pain. She suffers from radial neurapraxia and paresthesia, a tingling in the fingers caused by compression of a nerve by the pin in her hand, and her doctors are almost certain that she will develop traumatic arthritis in the near future. She has scarring on her wrist, she no longer has the range of motion in her wrist necessary to perform secretarial duties such as repeated typing, and she cannot lift heavy objects. While it may be on the low side, we find no abuse of discretion in the trial court's award of $30,000.00 for pain and suffering.
Nor do we find an abuse of discretion in the trial court's award for future economic loss. Defendants contend the trial court erred in awarding plaintiff loss of future wages until age sixty-five when the United States Department of Labor statistics show plaintiff, who was fifty-seven at the time of trial, had a work life expectancy of only five years. Future loss of earnings cannot be calculated with mathematical certainty, but sound judicial discretion should be exercised after all factors have been weighed. Absent an abuse of this discretion, a reviewing court may not substitute its judgment for that of the trial court. Robinson v. Graves, 343 So.2d 147 (La.1977). Among the factors to be considered are plaintiff's physical condition prior to the accident, her past work record as to consistent employment and amount of earnings, and the probability she would have continued to earn wages over the remainder of her working life as she had in *74 the past had she not sustained the injury. Viator v. Gilbert, 216 So.2d 821 (La.1968); Morgan v. Willis-Knighton Medical Center, 456 So.2d 650 (La.App. 2d Cir.1984).
At the time of her accident, plaintiff was working as an executive secretary for a C.P.A. firm at an annual salary of $16,288.00. She testified that her job was secure; that she felt she had a future with the firm; that she needed to work to supplement her husband's Social Security disability income; that she had worked as a secretary since she was seventeen; and that she enjoyed secretarial work. In light of these facts we find no manifest error in the trial court's determination that plaintiff would have continued to work until she was sixty-five years of age.

THIRD PARTY DEMAND
The final issue is whether the trial court erred in granting judgment in SMH's favor on its third party demand for indemnification against Gibbs. The contract between SMH and Gibbs provides in Section 4.18.1:
To the fullest extent permitted by law, the Contractor shall indemnify and hold harmless the Owner and the Architect and their agents and employees from and against all claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from the performance of the Work, provided that any such claim ... (1) is attributable to bodily injury, ... and (2) is caused in whole or in part by any negligent act or omission of the Contractor, any Subcontractor, anyone directly or indirectly employed by any of them or anyone for whose acts any of them may be liable, regardless of whether or not it is caused in part by a party indemnified hereunder.
(Emphasis added.) An indemnity contract will be construed to indemnify an indemnitee against losses resulting to him partially through his own negligence where such intention is expressed in clear and unequivocal terms. Polozola v. Garlock, Inc., 343 So.2d 1000 (La.1977); Robinson v. State through Department of Transportation & Development, 454 So.2d 257 (La.App. 1st Cir.), writ denied, 458 So.2d 122 (La.1984).
The indemnity provision of the contract between SMH and Gibbs clearly and unequivocally provides that Gibbs is to indemnify SMH for any claims for bodily injury caused in whole or in part by Gibbs' negligence. Gibbs contends, however, that SMH waived its right to indemnity when it accepted the parking area for use on December 9, 1983, citing Section 9.9.4 of the construction contract. That section provides that the "making of final payment" constitutes waiver of all claims by SMH. SMH did not make final payment or give final acceptance by its letter of December 9. It merely conditionally accepted the area subject to correction of the items on the punch list. Thus, the trial court did not err in granting judgment in favor of SMH on its third party demand against Gibbs.
For the foregoing reasons, the judgment of the trial court is affirmed at defendants' costs.
AFFIRMED.
CARTER, J., dissents.
NOTES
[1] Plaintiff also sued the All Risk Corporation of Louisiana (All Risk), SMH's alleged liability insurer. Summary judgment was granted in favor of All Risk on the ground that it was only SMH's adjusting service, not its insurer. That judgment is final and not an issue here.
[2] Although this accident occurred after the enactment of comparative negligence in this State, the trial court did not apportion fault among the defendants. Neither defendant raised this issue as an assignment of error so we will not treat it.
[3] The area where plaintiff fell meets the definition of excavation under § 02200 of the Project Manual: "Excavation consists of removal and disposal of material encountered when establishing required grade elevation."