623 So.2d 14 (1993)
Eula BERTHELOT
v.
AETNA CASUALTY AND SURETY COMPANY, et al.
No. CA 92 1404.
Court of Appeal of Louisiana, First Circuit.
July 2, 1993.
*16 David W. Robinson, Baton Rouge, for plaintiff-appellee Eula Berthelot.
Arthur H. Andrews, Funderburk and Andrews, Baton Rouge, for defendant-appellant Aetna Cas. and Sur. Co., et al.
Before EDWARDS, SHORTESS and WHIPPLE, JJ.
WHIPPLE, Judge.
Defendants, B. Olinde and Sons Company, Inc., doing business as Baton Rouge Beer Agency (B. Olinde), and Aetna Casualty and Surety Company, appeal the judgment of the trial court in favor of plaintiff, Eula Berthelot, and against defendants. Plaintiff answered the appeal. For the following reasons, we affirm.

*17 FACTS AND PROCEDURAL HISTORY
On the weekend of June 2, 3, and 4, 1989, St. Joan of Arc Catholic Church (St. Joan of Arc) held its annual church fair in Bayou Pigeon, Louisiana. The church had rented beer dispensing trailers to sell beer to fair patrons. The Miller Lite beer trailer was owned by B. Olinde and manufactured by Waymatic, Inc.
Because of a lack of sufficient electrical outlets near the fair grounds, church volunteers had run temporary electrical lines to the grounds for the beer dispensing trailers and a daiquiri machine. The lines were connected to three-hole sockets, but only two wires were used instead of three. A third wire, for grounding, was not used. The Miller Lite trailer was plugged into one of these lines.
Plaintiff attended the fair on Saturday evening, June 3, 1989. Because of rainy weather on Friday evening and Saturday morning, the ground was very wet. Plaintiff purchased a cup of beer at the Miller Lite trailer and then walked over to the Budweiser trailer to speak with relatives. It became apparent that the Budweiser trailer was shocking patrons, and thus, plaintiff suggested to her relatives that they walk over to the Miller Lite trailer which had not shocked her when she purchased her beer.
Plaintiff's brother ordered a round of beers at the Miller Lite trailer. As plaintiff reached to pick up her beer from the metal counter of the trailer, her finger touched the counter, and she received an electrical shock. According to plaintiff, she experienced blurred vision, started shaking and felt like she was "glued to the ground". The force of the shock then caused her to fall to the ground. Plaintiff's relatives helped her up, and she left the fair to change her clothes.
Later that evening, plaintiff returned to the fair and then went to a bar. While she did not have any aches or pains at that time, she testified that as the evening progressed, she developed a headache and red spots on her face.
Over the next few days, plaintiff became very nervous and apprehensive of electrical appliances in her house, including light switches. She developed trouble with her memory and concentration. Plaintiff began to experience episodes of weakness and shaky limbs and was eventually diagnosed as suffering from post-traumatic stress disorder.
On October 4, 1989, plaintiff filed suit against B. Olinde and its insurer, Aetna; and St. Joan of Arc and its insurer, Catholic Mutual Relief Society. St. Joan of Arc and Catholic Mutual Relief Society answered the petition and filed a cross-claim against B. Olinde and Aetna, and a third party demand against Waymatic, Inc., as manufacturer of the beer trailer.[1] Plaintiff then amended her petition to name Waymatic, Inc. as a defendant. Subsequently, St. Joan of Arc and its insurer cross claimed against Waymatic.
Prior to trial, plaintiff settled her claims against St. Joan of Arc, Catholic Mutual Relief Society, and Waymatic and the case proceeded to trial against B. Olinde and Aetna. In written reasons for judgment dated September 30, 1991, the trial stated that plaintiff had suffered damages in the amount of $204,072.00, consisting of $28,340.00 in past loss of wages; $118,121.00 for future loss of wages; $7,611.00 in medical expenses; and $50,000.00 in general damages. Fault was apportioned to B. Olinde in the amount of 33% with the remaining fault apportioned to Waymatic and St. Joan of Arc, the parties dismissed prior to trial.
Accordingly, on January 3, 1992, the trial court rendered judgment in favor of plaintiff and against B. Olinde and Aetna for damages in the amount of $67,343.76 plus $3,530.00 for expert witness fees. B. Olinde and Aetna appeal this judgment, alleging the trial court erred: (1) in assessing any fault whatsoever to B. Olinde, (2) in awarding excessive damages for plaintiff's post-traumatic stress disorder, and (3) in awarding excessive damages for future loss of earnings.
*18 Plaintiff answered the appeal, contending that the trial court erred: (1) in assessing any fault to St. Joan of Arc and Waymatic; or alternatively (2) in apportioning fault equally among St. Joan of Arc, Waymatic, and B. Olinde; and (3) in awarding general damages which were inadequate.

FAULT OF THE PARTIES

(Defendants' Assignment of Error No. 1; Plaintiff's Assignments of Error Nos. 1 & 2)
The parties challenge the trial court's findings of fault as to each of the named defendants.[2] B. Olinde contends that the trial court erred in assessing any fault to it. Plaintiff, on the other hand, contends that B. Olinde was solely at fault, and thus, that the trial court erred in assessing any fault against St. Joan of Arc or Waymatic. After carefully considering the record, we find no error in the trial court's finding of fault on the part of each of these alleged tortfeasors or in its apportionment of fault.

St. Joan of Arc Catholic Church
As stated in written reasons for judgment, the trial court found that the volunteer electrician who installed the electrical lines for the church was negligent in improperly connecting the wires. The court further found that other church volunteers were negligent in installing metal poles in the ground which were wired to the beer trailer in an attempt to ground the trailer after it became apparent that patrons were being shocked. The trial court concluded that St. Joan of Arc was responsible for the negligence of its volunteers.
Plaintiff challenges this finding, alleging there was no showing made that the church knew or should have known that a grounded connection would be required; and that the church can not be held vicariously liable for the acts of its volunteers. We find that both of these arguments lack merit and conclude St. Joan of Arc was at fault as the owner or entity having custody of immovable property with an unreasonably dangerous condition or defect.
St. Joan of Arc, as the owner or custodian having custody of the fair grounds, had a duty to keep such property in a reasonably safe condition. The church had a duty to discover any unreasonably dangerous condition on the premises and either correct the condition or warn potential victims of its existence. Wallace v. Slidell Memorial Hospital, 509 So.2d 69, 73 (La.App. 1st Cir.1987). This duty is the same under both the strict liability theory of LSA-C.C. art. 2317 and the negligence theory of LSA-C.C. art. 2315. Carter v. Board of Supervisors of Louisiana State University, 459 So.2d 1263, 1265 (La. App. 1st Cir.1984), writ denied, 462 So.2d 1248 (La.1985).
The difference in proof between the theories is that under LSA-C.C. art. 2315, the plaintiff must show that the owner or custodian either knew or should have known of the risk, whereas under LSA-C.C. art. 2317, the plaintiff is relieved of proving scienter on the part of the defendant. Thus, under a strict liability theory of recovery, plaintiff has the burden of proving that: (1) the property which caused the damage was in the custody of the defendant, (2) the property was defective because it had a condition that created an unreasonable risk of harm to persons on the premises, and (3) the defect in the property was a cause-in-fact of the resulting injury. Carter, 459 So.2d at 1265-66.
It is undisputed that the church fair was sponsored on church premises. The record also supports the finding that the electrical lines installed for the purpose of supplying electricity to the beer trailers presented an unreasonable risk of harm to fair patrons. Huey Hebert, an electrician and member of the St. Joan of Arc church parish, testified that the electrical outlets on the fair grounds were not appropriately wired and that any electrician should have understood the need for a ground wire. Robert Nethken, an electrical engineering professor at Louisiana State University, characterized the electrical *19 receptacles on the church grounds as "very, very sloppily wired."
Dr. Leonard Adams, a professional engineer and retired professor of electrical engineering at L.S.U., testified that the electrical lines used for the beer dispensing trailers constituted a very poor and inadequate job of wiring because the lines lacked ground wires. Dr. Adams explained that the purpose of grounding is to draw leakage current away from the appliance to protect the user from electrical shocks. With a good electrical ground, the user of the appliance would not be shocked. Thus, in the absence of ground wires, there was a potential risk that any appliance plugged into these outlets would shock fair patrons, especially considering the wet conditions of the fair grounds. We conclude that such a risk of harm to patrons was an unreasonable risk.
Finally, it is clear from the record that this defect in the premises, i.e. faulty wiring which resulted in an unreasonable risk that fair patrons would be shocked, was a cause-in-fact of plaintiff's injury. St. Joan of Arc was at fault under the theory of strict liability of LSA-C.C. art. 2317. Because we find that St. Joan of Arc was properly found at fault under a theory of strict liability, we need not address the issue of whether it was negligent or could be held vicariously liable for the acts of its volunteers.

Waymatic, Inc.
The lower court also concluded that Waymatic was at fault for manufacturing a defective thing. The court found the trailer to be defective because no adequate warning was given concerning grounding and electrical shock and because the trailer did not have a circuit interrupter which would stop the current to the appliance when dangerous voltage was emitted.
Under the Louisiana Products Liability Act, LSA-R.S. 9:2800.51 et seq., the manufacturer of a product shall be liable for damage caused by a characteristic of the product which renders the product unreasonably dangerous when such damage arises from a reasonably anticipated use of the product. A product is unreasonably dangerous if an adequate warning about the product has not been provided. LSA-R.S. 9:2800.54 B(3).
Whether a particular warning is adequate is a question of fact. Bloxom v. Bloxom, 512 So.2d 839, 844 (La.1987). A court of appeal may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. Stobart v. State of Louisiana through Department of Transportation and Development, 617 So.2d 880, 882 (La.1993).
Dr. Adams inspected the trailer in question after it had been transported back to B. Olinde's premises and determined there was a three milliampere current leakage in the trailer. Dr. Adams testified that refrigeration equipment is a type of equipment that has a propensity to develop current leakage because it is designed to extract moisture from the air. The trailer was equipped with an A.C. voltage monitor and polarity indicator to alert the user when the polarity of the current was reversed. The device also alerted the user when the trailer was improperly grounded. The polarity indicator had a sign which stated: "IF NEITHER POLARITY LIGHT IS ILLUMINATED, THE GROUND IS DEFECTIVE."
Dr. Adams opined that the manufacturer of the trailer probably anticipated that in the application of this device there could be leakage voltage distributed around the metal parts of the trailer. However, when B. Olinde purchased the unit from Waymatic, the trailer was delivered by a third party deliverer, and no representative of Waymatic ever demonstrated how the trailer was to be operated.
Moreover, the written information furnished with the trailer did not provide any instruction or warning with respect to the risk of leakage current or adequate warning of the risk of electrical shock and the need to properly ground the appliance. No explanation of the purpose of the polarity indicator was given. B. Olinde employees were under the impression that the purpose of the indicator was to warn of problems with the refrigerator's compressor rather than serving as a safety device to warn of possible electric shock. As the manufacturer of this product, *20 Waymatic should have been aware that the appliance was prone to exhibiting current leakage and should have provided a warning about this danger.
Use of the beer dispensing trailer on wet ground or in rainy weather would certainly be a use of the product which the manufacturer should have reasonably anticipated. Considering the risk of electric shock under such conditions when the trailer is not properly grounded, we conclude that the trial court was not manifestly erroneous or clearly wrong in its determination that no adequate warning was given. We need not address whether the product was defective for lacking a circuit interrupter. We find that the trial court did not err in finding Waymatic at fault inasmuch as the lack of an adequate warning caused the accident to occur.

B. Olinde and Sons, Company
The trial court also concluded that B. Olinde was at fault for its ownership of a defective thing and for its negligence in renting the trailer without proper warning or installation. B. Olinde challenges this finding.
To establish liability in a negligence case, the plaintiff must show that: (1) the defendant had a duty to conform its conduct to a specific standard, (2) the defendant's conduct failed to conform to the appropriate standard, (3) the defendant's substandard conduct was a cause of the plaintiff's injuries, and (4) the risk of harm was within the scope of the breached duty. Fox v. Board of Supervisors of Louisiana State University and Agricultural and Mechanical College, 576 So.2d 978, 981 (La.1991).
B. Olinde is in the business of renting large refrigerated appliances. Part of its responsibility in renting the beer dispensing trailers is to set up the trailer and ascertain that it is operating properly. Father Mario Termini, director of St. Joan of Arc, testified that it was his understanding that when B. Olinde delivered the trailer, B. Olinde would set it up to make sure it was in operating condition. Based on this evidence, the trial court concluded that B. Olinde owed a duty to protect its customers from improper electrical connections.
The particular facts and circumstances of each individual case determines the extent of the duty and the resulting degree of care necessary to fulfill the duty. Socorro v. City of New Orleans, 579 So.2d 931, 938 (La.1991). Considering the fact that B. Olinde placed itself in the business of renting beer dispensing trailers to the public, we agree with the trial court that this defendant had a duty to its customers to ensure the trailers were properly installed when rented; and that this duty encompassed the risk of an individual being shocked by the trailer if improperly grounded.
The trailer was delivered to St. Joan of Arc by Elwood Gautreaux, a B. Olinde employee. However, he did not plug the trailer into the outlet and stated at trial that he believed a church volunteer did so. However, Mr. Gautreaux did not inspect the outlet, nor did he check the polarity indicator on the trailer to ensure that the trailer was properly grounded. More importantly, Mr. Gautreaux testified that he did not understand the dangers of improper grounding and that B. Olinde had never instructed him concerning the need to check the grounding of the trailer nor had his employer explained the purpose of the polarity indicator.
The trial court also noted that evidence presented at trial indicated that B. Olinde could have purchased a device at the nominal cost of $15.00 which could be used by non-electricians to determine if an electrical outlet was grounded. Based on this evidence, the trial court determined that B. Olinde could have cheaply and easily checked the outlet in question to determine if it was safe to use. The trial court further stated that B. Olinde should have trained its employees to inspect electrical connections.
Because of B. Olinde's failure: (1) to properly install the beer dispensing trailer, (2) to inspect the outlet used and (3) to properly train its employees, we also conclude that B. Olinde was negligent and breached the duty owed to plaintiff and other patrons of the St. Joan of Arc fair. A finding of negligence is a question of fact to be determined by the trier of fact and will not be disturbed by a reviewing court in the *21 absence of manifest error. Booty v. Kentwood Manor Nursing Home, Inc., 483 So.2d 634, 639 (La.App. 1st Cir.1985), writ denied 486 So.2d 754 (La.1986).
Considering the evidence presented, we conclude the trial court was not manifestly erroneous or clearly wrong in finding that B. Olinde was negligent in renting out its beer dispensing trailer without properly installing it or warning the user of the potential dangers of electrical shock.
Regarding the trial court's finding that B. Olinde was also liable as the owner of a defective thing, for reasons discussed above, we also conclude that the trial court was not manifestly erroneous in finding that the beer dispensing trailer was defective for failing to contain an adequate warning to users of the risk of shock. As owner of a defective thing which caused injury to plaintiff, B. Olinde is liable. See generally Stovall v. Shell Oil Company, 577 So.2d 732, 741 (La.App. 1st Cir.), writ denied, 582 So.2d 1309 (La.1991).

QUANTIFICATION OF FAULT

(Defendants' Assignment of Error No. 1; Plaintiff's Assignments of Error Nos. 1 & 2)
The parties to the appeal challenged the trial court's apportionment of fault at 33% to B. Olinde and the remaining fault apportioned to St. Joan of Arc and Waymatic.
In Watson v. State Farm Fire and Casualty Insurance Co., 469 So.2d 967, 974 (La.1985), the Louisiana Supreme Court set forth five factors to be considered in apportioning fault: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger; (2) the extent of the risk created by the conduct; (3) the significance of what was sought by the conduct; (4) the capacities of the actor, whether superior or inferior; and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought.
The apportionment of fault among co-tortfeasors is a finding of fact which will not be set aside on appeal unless found to be manifestly erroneous. Valet v. City of Hammond, 577 So.2d 155, 167 (La.App. 1st Cir. 1991).
When B. Olinde delivered its beer dispensing trailer to St. Joan of Arc in rainy weather, the trailer was situated on wet ground. No attempt was made by B. Olinde or its employee at the fair site to determine whether the appliance was properly grounded. In fact, Mr. Gautreaux had not been instructed by B. Olinde as to the method to use in the hook-up of the trailer or the manner to ensure proper grounding thereof. These omissions on the part of B. Olinde created a substantial risk to fair patrons and directly contributed to plaintiff's receipt of injuries due to the electrical shock she encountered. Although B. Olinde may not have been aware of the propensity of this type of appliance to develop current leaks, it should have been aware of the need to ensure proper grounding.
Clearly, the fault of each of these parties contributed to plaintiff's accident. Moreover, a comparison of the respective degrees of duty and the respective breach of duty by the parties leads us to conclude that the trial court was not manifestly erroneous in apportioning fault to B. Olinde in the amount of 33% or in apportioning the remaining fault to St. Joan of Arc and Waymatic. See generally Socorro, 579 So.2d at 942.
Thus, we find no merit in these assignments of error.

QUANTUM
B. Olinde contends that the trial court awards for general damages and future loss of wages were excessive. Plaintiff, on the other hand, contends that the general damage award was inadequate.
In the assessment of damages in the cases of offenses, quasi offenses, and quasi contracts, much discretion is given to the judge or jury. LSA-C.C. art. 2324.1. Before an appellate court can disturb an award made by a trial court, the record must clearly reveal that the trier of fact abused its much discretion in making its award. Coco v. Winston Industries, Inc., 341 So.2d 332, 335 (La. 1976). The initial inquiry into whether the *22 award is inadequate or excessive must always be directed at whether the trial court's award for the particular injuries and their effects upon this particular injured person is a clear abuse of the trier of fact's much discretion. Reck v. Stevens, 373 So.2d 498, 501 (La.1979).

General Damages

(Defendants' Assignment of Error No. 2; Plaintiff's Assignment of Error No. 3)
The trial court found that plaintiff suffers from post-traumatic stress disorder induced by the electrical shock she received from the Miller Lite trailer at the fair and awarded $50,000.00 in general damages.
Dr. John Bolter, a clinical neuropsychologist who has treated plaintiff since the accident, testified that plaintiff's behavior following the accident was consistent with the diagnosis of post-traumatic stress disorder. He explained that this disorder can be triggered by an experience which the patient believes to be life threatening (whether this belief is rational or not) and is usually associated with recurrent thoughts of the trauma, fear and anxiety, and a tendency to avoid anything that symbolized the trauma.
Although the electrical shock experienced by plaintiff was characterized by the two electrical engineer experts as probably being mild, plaintiff perceived this event as a life threatening experience. Following the incident, she was plagued with the idea that she could have died from the shock. By the Monday following the accident, plaintiff became very nervous and apprehensive of all electrical appliances in her home. Plaintiff's fears and anxieties developed to the point that she was afraid to stay home alone and would become anxious and weak in the presence of a gathering of people.
Testing performed by Dr. Bolter indicated that plaintiff suffers from significant emotional distress and is functionally impaired as shown by her difficulty with memory and concentration. Dr. Bolter related these problems to plaintiff's trauma and opined that she is psychologically disabled. He testified that plaintiff is still easily threatened by events that challenge her, and he opined that there was a 50/50 chance that plaintiff's condition would improve.
Dr. Louis Cenac, a psychiatrist who also treats plaintiff, concurred in the diagnosis of post-traumatic stress disorder. He noted that plaintiff's condition has resulted in certain phenomena such as leg shaking, body tremors and inability to walk other than with "the smallest festinating type gait," meaning plaintiff takes "baby steps."
Plaintiff's family physician, Dr. William Gatow, testified that since the accident plaintiff has been extremely apprehensive and frightened. As a result of this disorder, plaintiff's tolerance for anxiety or stress in daily activities is very limited. Whenever plaintiff is faced with a stressful event in her life, she reverts back to a debilitating state.
Considering the record in its entirety, we find no abuse of discretion in the trial court's award of $50,000.00 for general damages.

Loss of Future Earnings

(Defendants' Assignment of Error No. 3)
Loss or impairment of earning capacity is determined by subtracting plaintiff's earning ability after the injury from earning ability immediately prior to the injury. The focus is not on actual earnings per se. Allen v. Great Atlantic & Pacific Tea Company, Inc., 589 So.2d 43 (La.App. 1st Cir.1991). Impairment of earning capacity cannot be calculated with mathematical certainty, and sound judicial discretion must be exercised after all proper considerations are weighed. Philippe v. Browning Arms Company, 395 So.2d 310, 317 (La.1980), on rehearing.
Prior to the incident in question, plaintiff was employed as a dredge boat cook, earning $6.50 per hour, working twelve hours a day in fourteen day shifts, followed by seven days off. Plaintiff has not been able to work since the accident.
Dr. Bolter opined that at the time of trial, plaintiff was psychologically disabled from returning to work. Although he stated that "hopefully" plaintiff would not be disabled forever, he believed that plaintiff was going to encounter serious problems in returning to *23 work because she has difficulty assuming many of the responsibilities she could handle in the past. When questioned further, Dr. Bolter stated that his prognosis was that plaintiff had a 50/50 chance of improving in the future, but her improvement would be a very gradual process.
Dr. Cenac opined that plaintiff would never be able to work again for several reasons, not all of which were related to the accident. However, he later stated that the complications which would prevent plaintiff from returning to work resulted from the accident and the type of disorder she sustained.
Dr. Gatow also opined that returning to work would be totally beyond plaintiff's ability.
Dr. G. Randolph Rice, an expert economist, calculated plaintiff's future loss of earnings based on her work history and wages as a dredge cook, with no allowance for overtime. Dr. Rice noted that plaintiff was fifty-three years old with less than a high school education. He calculated her work life expectancy as 6.95 years, taking into account the possibility of times of layoff, illness and voluntary decision not to work. Based on all of these factors, Dr. Rice calculated the present value of plaintiff's future loss of earnings as $118,121.00.
Considering the circumstances of this case, including the uncertainty that plaintiff will ever be able to return to the work force, we find no abuse of discretion in the award made by the trial court for plaintiff's loss of future wages and earning capacity.
Thus, we find no merit in this assignment of error.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed equally between the parties.
AFFIRMED.
EDWARDS and SHORTESS, JJ., concur.
NOTES
[1] In the third party demand, Waymatic, Inc. was improperly referred to as Waymatic Manufacturing Company.
[2] Although B. Olinde and its insurer were the only remaining defendants at trial, fault on the part of the dismissed defendants was properly at issue for the purposes of apportioning fault in accordance with LSA-C.C. art. 2324.