519 So.2d 1198 (1988)
James R. LADNER, Individually and as Natural Tutor of his Minor Son, Michael Ladner and Nadine Ladner, Plaintiffs/Appellants,
v.
FIREMEN'S INSURANCE COMPANY OF NEWARK, William Creech, Individually and as Natural Tutor of his Minor Son, Brian Joseph Creech and Suzanne Creech, Insolido, Defendants/Appellees.
No. 19264-CA.
Court of Appeal of Louisiana, Second Circuit.
January 20, 1988.
*1200 C. William Gerhardt & Associates by C. William Gerhardt, Shreveport, for plaintiffs/appellants.
Richard H. Switzer, Leon M. Pliner, Shreveport, for defendants/appellees.
Before HALL, C.J., and FRED W. JONES, Jr., and NORRIS, JJ.
HALL, Chief Judge.
This is a personal injury action arising from an accident which occurred when two children, Michael Ladner and Brian Creech, rode a motorbike into a barbed wire fence which had recently been constructed across a pathway located on property owned by Brian Creech's parents. The plaintiffs are James R. Ladner, individually and as natural tutor of his minor son, Michael; and Nadine Ladner. The defendants are William C. Creech, individually and as natural tutor of his minor son, Brian; Suzanne Creech; and Fireman's Insurance Company of Newark.
Following trial on the merits, the district judge found that the accident was caused by the gross negligence of Michael Ladner in the operation of his motorbike and was not caused by any negligence on the part of the defendants. The court also found that the defendants were not strictly liable for constructing the barbed wire fence across the path on their property. Judgment was rendered in favor of defendants rejecting plaintiffs' demands. Plaintiffs' motion for a new trial based on newly discovered evidence was denied. Plaintiffs appealed, contending that the trial court erred in finding that the defendants were not negligent and that the fence did not present an unreasonable risk of harm. They also appeal the trial court's finding that Michael was grossly negligent, its failure to award damages, and the denial of their motion for a new trial. We reverse.
The Facts
The accident occurred on October 14, 1981. Michael Ladner was 12 years old. Brian Creech was 8 years old. The boys were neighbors in the rural community of Keithville, Louisiana and played together regularly. Michael received a motorbike for Christmas, 1980 and he testified that from that time until the accident occurred on October 14, 1981 he would go across the road to the defendants' house and ride the motorbike with Brian an average of two or three times per week.
The defendants' house was located on a five-acre, rectangular shaped lot. The western boundary of the lot was marked by a neighbor's barbed wire fence. The eastern boundary of the lot was marked by the Sparks Davis Road. The boys frequently rode the motorbike on a path which roughly followed the boundaries of the defendants' property and encircled the home.
Shortly before the accident, the defendants enclosed approximately three acres of land behind their house with a barbed wire fence to contain a horse they had recently purchased. This fence intersected the path in two places and prevented anyone from making a complete circle on the path. Fence posts with four strands of barbed wire were erected on the east and south sides of the Creech property. The neighbor's barbed wire fence ran along the west side of the property. The north side of the three-acre area was fenced on the easterly end by connecting the east fence with the northeast corner of the house. On the westerly end of the north side where the accident happened, three strands of barbed wire were run from the neighbor's fence over to a tree about 10 feet away, and then to another tree and on to the chain link *1201 fence. A schematic plat of the property, taken from a plat filed into evidence, is attached as an appendix to this opinion.
After the new fence was built, the only way to get into the enclosed three acres was to enter the back yard area of the home which was enclosed with a chain link fence and then go out the gate in the chain link fence. Prior to this time, Michael would cross the Sparks Davis Road and enter the defendants' property at its eastern boundary. On the day of the accident Michael was prevented from taking his normal route by the new fence. He went around the fence to the front of the defendants' house. He and Brian then entered the backyard area and proceeded through the gate of the chain link fence and into the area enclosed by the new fence. Once inside, the boys, with Michael driving, proceeded to the path and began to go around the path on the motorbike. They hit the new fence where it intersected the path in the northwestern corner of the enclosed area. At that point, the barbed wire strands were strung from the old fence over to a tree about 10 feet away. The path ran through this 10 foot area between the old fence and the tree.
Michael testified that he was traveling at his usual rate of 30-35 miles per hour when he ran into the fence. He stated that although he was looking straight ahead, he never saw the barbed wire, had no warning at all, and "just hit it". He testified that Brian did not warn him about the barbed wire before they hit it. Brian testified that they were riding at their normal rate of speed when the accident occurred and agreed that Michael was looking straight ahead when the accident occurred. Brian was seated behind Michael on the motorbike and could not see straight ahead; he could however look out to the side. He stated that he did not see the strands of wire before they hit them and testified that he and Michael just forgot about the fence.
The exact date when the fence was erected was disputed at trial. Checks introduced into evidence showed that the fencing materials and the horse were paid for on September 21, 1981 and Mr. Creech testified that he put up the fence the same week that Mrs. Creech bought the fence. Henry Green, a man who helped Mr. Creech build the fence, also testified that the fence was put up in late September. Mrs. Creech testified that her husband and Mr. Green strung the barbed wire fence on Saturday, September 26 and Sunday, September 27 and that the horse was put in the pasture that Sunday.
Mrs. Creech also testified, however, that she and Mr. Creech were the ones that strung the barbed wire across the path where the accident occurred and Mrs. Ladner testified that when she questioned Brian Creech as to why he did not do something to get Michael's attention and prevent him from running into the fence that he replied "I would have had I known it was there. They must have put it up a day or two before when I was at school because I did not see them put it up."
Michael testified that he was aware of the old fence on the west side of the defendants' property and the new fence on the east side but that he had never seen the wire strung across the path between the old fence and the tree before he hit it. He also stated that he had not seen a horse on the defendants' property prior to the accident.
Michael testified that he did not remember exactly when he last rode on the path before the accident but that it was at least two or three days. He stated that whenever he and Brian rode they almost always went all the way around the house and he believed that on this last occasion prior to the accident he and Brian had ridden the path all the way around and stated definitely that he had ridden through the area where the accident occurred and that there was no wire up.
Brian testified that he had ridden with Michael on the path many times but could not remember when the last time before the accident was. He also did not remember if they had ridden out there after the new fence was put up. Brian did remember however that the day of the accident was the first time that he and Michael had *1202 gone through the gates in the chain link fence to get to the enclosed area.
Mrs. Creech testified that Michael and Brian had ridden together several times after the pasture was fully enclosed but before the accident. She testified that she warned both Michael and Brian about the fence and that she warned Michael about it the day before the accident; also that she had told them to go slow and not to aggravate the horse.
The trial court resolved the conflicting testimony as to when the fence was built in favor of the defendants, finding that it was constructed three weeks prior to the accident. The preponderance of the evidence supports that conclusion.
Mr. Creech testified that he knew the path was there and that the children rode on it, that he could see the danger in putting the fence over the path but that he placed no warning on the fence and did not tell Michael or Brian to watch out for the fence when they rode the bike.
Dr. Percy H. Miller, an expert in safety engineering, testified that stringing the barbed wire across the bike path created an unreasonably dangerous condition. He explained that since the barbed wire was attached to an old fence on one side and a tree on the other the boys would not have had the benefit of new construction to alert them to the hazard. He also stated that while knowledge of the presence of the new fence on the east side or of a horse in the pasture would lead a person to conclude that the pasture was enclosed it would not tell the person where the other fences were that completed the enclosure. He testified that brightly colored strips of material could have been attached to the fence or a barrier made of brush could have been placed across the path in front of the fence to advise people of the change. He stated that these precautions should remain in place until the path had grown over.
As a result of the accident Michael suffered a deep laceration on the left side of his neck which exposed the external jugular vein and underlying muscles. Sutures were required to close the wound. He also received multiple small lacerations on both upper arms and over the chest which required suturing. Michael was hospitalized for one night. His mother testified that for three to four weeks after the accident he was so sore he could not do anything for himself, that she had to help him get up and down and that he was unable to attend school. She testified that she had to sleep in his room during this time because he was unable to move his head or turn over without assistance. The laceration on Michael's neck was about three to three and one-half inches in length. A large keloid scar which was initially red and then later faded to pink, formed over the injury. Michael and his parents testified that the scar caused him considerable embarrassment. At the time of trial Michael was undecided as to whether or not he would undergo plastic surgery in an effort to improve the appearance of the scar but stated that he probably would.
Trial Court Findings
The trial court found that Michael was guilty of gross negligence in the operation of his motorcycle. It also found that Mr. and Mrs. Creech were not negligent and were not strictly liable in the construction of the fence on their property. The trial court found that the fence had been constructed for approximately three weeks before the accident and thus was not a "trap" or an unreasonably dangerous condition. It further found that the fence was constructed to contain a horse rather than to stop motorcycle riding in the area.
Negligence
Plaintiffs contend that the trial court erred in finding that defendant landowners were not negligent despite the fact that they erected a barbed wire fence across a path in a wooded area which they knew was frequently used by Michael Ladner and their son for riding a motorcycle. They argue that given the defendants' knowledge that the path was used by children for motorcycle riding it was negligent of them to erect the fence across the path without placing a warning device on or in front of the fence. They also argue that the risk of injury to the children from the *1203 unmarked fence was clearly foreseeable and that in light of the probability of injury to the children, a reasonable person would have taken the simple and inexpensive precautions of placing brightly colored flags or strips of material on the strands of wire and/or placing a barricade in front of the fence to remind the children of the presence of the fence.
Defendants, on the other hand, contend that the fence had been erected for three weeks prior to the accident, that Michael was aware of the new construction and that the accident was caused by Michael's inattention and failure to keep a proper lookout as well as his driving his motorcycle at a dangerously fast rate of speed.
In a negligence cause of action, LSA-C. C. Arts. 2315 and 2316, a plaintiff must prove by a preponderance of the evidence that,
(1) defendant's conduct was a cause in fact of plaintiff's harm;
(2) defendant owed a duty to plaintiff which encompassed the risk he encountered; and
(3) defendant breached that duty.
(1) Cause In Fact
The test for cause in fact is whether the defendant's alleged negligent act was a "substantial factor" in bringing about plaintiff's harm. A negligent act is a substantial factor in bringing about an accident if the accident would not have occurred without it. Breithaupt v. Sellers, 390 So.2d 870 (La.1980).
In the instant case, the defendant's alleged negligent act was the failure to place warning flags on the fence or to place a barricade in front of the fence. Although the question is not free from difficulty, it is reasonable to infer that if the defendant had "flagged" the fence or barricaded the path in front of the fence, Michael's attention would have been attracted, the presence of the fence would have been obvious and Michael would not have driven his motorcycle into it. We note that the mere possibility that the accident would have occurred despite the suggested precautions does not break the chain of causation. Dixie Drive It Yourself System New Orleans Co., Inc. v. American Beverage Co., 242 La. 471, 137 So.2d 298 (La.1962). We conclude that the failure of the defendant to "flag" the fence or barricade the pathway in front of the fence was a substantial factor in bringing about the accident and therefore was a cause in fact of Michael's collision with the fence.
(2) Duty
A mere finding of causation in fact does not, however, establish defendant's liability. Plaintiff must also prove that the defendant owed the plaintiff a duty which encompassed the risk that plaintiff encountered. If no duty is owed to act reasonably to avoid harm to the plaintiff, the defendant need not take any care for plaintiff's safety and cannot be said to have acted negligently in regard to the plaintiff. We must then consider what, if any, duty the law imposes upon a defendant who has constructed a barbed wire fence across a pathway frequently used by children for riding motorcycles.
It is well settled that a landowner has a duty to discover, and either correct or warn a guest of any unreasonably dangerous conditions on his premises. Our inquiry then is whether the barbed wire fence constituted an unreasonably dangerous condition.
The existence of barbed wire fences in rural areas is commonplace. Barbed wire is an inexpensive and readily available means of enclosing property for the purpose of containing livestock. Barbed wire fencing therefore serves a useful and necessary function in society and certainly would not constitute an unreasonable risk of harm in most circumstances. In the instant case, however, the probability of injury from the barbed wire fence was greatly increased by the fact that the fence was positioned so that it intersected a path that the children regularly used. The probability of an injury occuring was also increased by the fact that in the place where the accident occurred, the strands of *1204 barbed wire were strung between an existing fence and a tree. There was no new construction evident in that vicinity to remind the children of the presence of the fence. Without a new fence post in the area where the accident occurred and without the fence being "flagged" with colored strips of material, the strands of barbed wire were difficult to see. This conclusion is supported by the testimony of Michael and Brian, both of whom testified that Michael was looking straight ahead when the accident occurred. Michael testified that he did not see the fence before he hit it. Brian testified that while he could not look straight ahead from where he was seated behind Brian, he could look out to the side and that he did not see the fence before they hit it. These statements indicate that the strands of barbed wire across the path were not readily visible and that the pathway appeared to be unobstructed. We note that the degree to which a danger may be observed by a potential victim is one factor in the determination of whether the condition is unreasonably dangerous. Wallace v. Slidell Memorial Hospital, 509 So.2d 69 (La.App. 1st Cir.1987).
In Natal v. Phoenix Assurance Co. of New York, 305 So.2d 438, (La.1974) the court found that a sliding glass door created a deceptive illusion and was a trap by reason of the lighting conditions and absence of signs or markings on the door. The court held that the defendant homeowner was negligent in failing to warn the plaintiff, a minor child, of the hazard despite the fact that the plaintiff knew that the glass door was there and that at times it was closed. The court noted that glass doors and panels which are clear and without decoration create a transparency which, even under the best of circumstances, are difficult to observe.
In Williams v. Aetna Insurance Co., 402 So.2d 192 (La.App. 1st Cir.1981) the plaintiff fell as she left a store because she did not notice a five inch drop from a porch to a walkway. The plaintiff had been to the store on a number of occasions and had successfully negotiated the area where the accident occurred a few moments before she fell. The porch and the walkway were both constructed of brick and the court found that they presented a view of one continuous walkway without interruption. An expert testified that the construction created an optical illusion and the court noted that a person exiting the store, although observant, would get a deceptive view. The court found that this deceptive view constituted a hidden danger or trap and described the area where the accident occurred as a "beautifully camouflaged hazard".
In Sullivan v. Gulf States Utilities Co., 382 So.2d 184, (La.App. 1st Cir.1980) writ denied 384 So.2d 447 (La.1980) the plaintiff drove his car into a concrete pier located near the center of the driving lane in the parking lot at his job site. The piers had been in place for more than two months when the accident occurred and were two feet tall and four and a half feet in diameter. The accident occurred at night and the plaintiff was temporarily blinded or distracted by oncoming headlights. At the time of the accident, the pier was not marked, painted or barricaded and the evidence revealed that the pier's grayish color blended almost imperceptibly into the aging asphalt of the parking lot, which was unlighted. The court noted that the piers were difficult to see at night and characterized them as traps for the unwary. The court held that the defendants owed a duty to persons using the parking lot to properly label, mark and/or barricade the concrete piers.
In Bourg v. Redden, 351 So.2d 1300, (La.App. 1st Cir.1977), the defendants' land was used regularly by hunters, sightseers and motorcyclists for recreational purposes. To remedy the situation, defendant first posted "No Trespassing" signs along the access road to his property. When the signs were ignored, the defendant instructed one of his employees to string a steel cable across the road. The cable was attached to trees along the side of the road with metal clamps. The plaintiffs were riding their motorcycles along the road when they hit the stretched cable. The court held that the erection of the cable without flags in an area known to be extensively *1205 traveled by motorcyclists was a breach of duty. The court characterized the unflagged cable a trap and explained that the defendants' activities were not reasonable in view of the probability of harm to others.
In Dixon v. Allstate Insurance Company, 362 So.2d 1368 (La.1978), the 16-year old plaintiff collided with a sliding glass door in the defendant's home while engaged in horseplay. The plaintiff had been in and out of the door several times while it was open and did not know it had been closed. The court held the defendants were negligent stating:
"Care should increase with the magnitude of the harm which might befall a victim. A large sheet of thin, clean, transparent, untempered, non-laminated glass presents such an obvious risk of serious injury that it must be considered a hazardous substance. The location of such glass panels, blocking entry and exit through openings in houses designed as passageways multiply the opportunities for serious accidents.
The very least the owner of a building must do is warn a visitor when such a transparent door is closed. The warning is so simple and inexpensive, especially when compared with the risk of harm, that its absence ought not be excused. A decal, decorative tape, paint, or a simple strip of masking tape might be sufficient to prevent serious injury ...
... When there is an apparent danger, foreseeably involving great risk to the unwary, there is a duty to warn. The homeowner's failure to take any steps to prevent [sic] accidenther failure to warnwas negligence."
Turning to the instant case, we find that the stringing of barbed wire strands across the bike path without flagging the fence or barricading the pathway created an unreasonably dangerous condition and that the defendants' duty to correct or to warn of the unreasonably dangerous condition presented by the fence encompassed the risk of harm that the plaintiff actually encountered.
Michael was twelve years old. He had been riding his motorcycle on his parents' property and the defendants' property for almost a year without serious mishap. He testified that he was traveling at his normal rate of speed, which he estimated to be 30-35 miles per hour when the accident occurred. This testimony was corroborated by Brian. The most reasonable explanation for the accident is that Michael simply forgot where the fence crossed the path.
The objective of the duty imposed in the instant case was to protect against the likelihood that a user of the path, whether cautious, inattentive or forgetful, would fail to timely perceive the strands of wire and become involved in an accident. We hold that the duty to warn users of the pathway of the presence of the recently constructed fence was designed at least in part to protect careless or inattentive children and included the risk that Michael would forget where the fence crossed the path and run into it.
(3) Breach of Duty
The test for determining whether a landowner has breached his duty to correct or to warn of unreasonably dangerous conditions on his property is whether in the management of his property he has acted as a reasonable man in view of the probability of injury to others. Shelton v. Aetna Casualty and Surety Co., 334 So.2d 406 (La.1976). In situations where children are injured, the known characteristics and instincts of children must be considered in determining whether a person has exercised reasonable care. Williams v. Allstate, 268 So.2d 290 (La.App. 2d Cir.1972).
Mrs. Creech testified that she verbally warned the boys about the fence on a previous occasion. The issue is whether these warnings were adequate to protect the plaintiff from the harm posed by the fence.
Given the probability of injury to the children from the obstruction of the pathway with barbed wire and the possible severity of any such injuries, we hold that Mrs. Creech's verbal warnings to the children were inadequate to discharge the defendants' *1206 duty. The accident could have been avoided if the defendants had taken the simple and inexpensive precaution of flagging the fence or placing a barricade in front of it. The failure to take these precautions constituted a breach of a legal duty for which the defendants are liable.
Contributory Negligence
The fact that defendant's duty extended to the protection of the inattentive, careless minor plaintiff does not, however, mean that the minor is entirely relieved of the consequences of his own negligence. Michael was negligent in failing to keep a proper lookout and in forgetting the fence was there. Under principles of pure comparative negligence embodied in LSA-C.C. Art. 2323, the plaintiff's recovery is to be reduced by the percentage of his own fault. Factors influencing the degree of fault assigned include (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought, and (6) the relationship between the fault/negligent conduct and the harm to the plaintiff. Mart v. Hill, 505 So.2d 1120 (La.1987); Watson v. State Farm Fire and Casualty Insurance Co., 469 So.2d 967 (La.1985). After weighing these factors we assign 50% of the fault to Michael Ladner and 50% of the fault to the defendants.
Strict Liability
Defendants are also liable under LSA-C.C. Art. 2317 principles of strict liability. The fence, in defendant's custody, was defective in its position across the bike trail without warnings, presented an unreasonable risk of harm to the driver of the bike, and the condition of the fence was a substantial contributory cause of the accident.
Damages
Our review of the medical evidence indicates that an award of $10,000.00 in general damages will adequately compensate plaintiffs for Michael's injuries. We also award to plaintiffs $781.65 in special damages for medical expenses incurred up to the date of the trial. Concerning future medical expenses, the medical testimony revealed that a future surgical procedure to reduce the size of Michael's scar would cost approximately $1,350.00. An award of future medical expenses in this amount is warranted. The evidence does not support an award to Michael's parents for loss of Michael's love, society and consortium. The awards will be reduced by 50% because of Michael's comparative negligence.
Decree
For the reasons assigned, the judgment of the district court is reversed. Judgment is rendered against defendants William C. Creech, Suzanne Creech and Firemans Insurance Company of Newark, in solido, in favor of plaintiff James R. Ladner individually in the sum of $1,065.82 and in favor of said plaintiff as natural tutor of his minor son, Michael Ladner, in the sum of $5,000.00, together with legal interest thereon from date of judicial demand until paid, and for all costs of this proceeding, including the cost of the appeal.
REVERSED AND RENDERED.
*1207