642 So.2d 293 (1994)
Julie RICH, Plaintiff-Appellant
v.
TENCH ELECTRIC MOTOR WORKS, INC., et al., Defendants-Appellees.
No. 26072-CA.
Court of Appeal of Louisiana, Second Circuit.
August 19, 1994.
*294 A. Richard Snell, Bossier City, for appellant.
Bodenheimer, Jones, Klotz & Simmons by G.M. Bodenheimer, Shreveport, for appellee.
Before MARVIN, LINDSAY and WILLIAMS, JJ.
WILLIAMS, Judge.
Plaintiff instituted suit against the defendant for personal injuries she sustained when she fell from a second-story platform on its premises. The trial court dismissed the plaintiff's suit, and she appealed. For the reasons, assigned below, we reverse the trial court's judgment and render judgment for the plaintiff, allocating fault and assessing damages.

FACTS
During the evening of February 8, 1992, plaintiff, Julie Rich, and her friend, Rebecca English, visited four local bars drinking and celebrating plaintiff's birthday. At approximately 12:30 a.m., they went to a "jam session" at a warehouse owned by the defendant, Tench Electric Motor Works, and leased to the members of a local band. The plaintiff had attended jam sessions at this warehouse on several occasions prior to this night. Approximately sixty people had gathered at the warehouse to dance and listen to the band. Draft beer was being served on the premises, and guests were told they could bring their own alcoholic beverages.
After plaintiff and English arrived, the plaintiff got a cup of beer. Several minutes later, she decided to go to the restroom, which was located in the back of the room where the jam session was being held. As *295 she tried to enter the restroom, she found the door locked. She forced the door open. Plaintiff contends there was another party guest inside the restroom who was sick to her stomach and sitting on the floor.
At some time later, on plaintiff's second trip to the restroom, she noticed an open door down an adjacent hallway. She walked out of this door on to a small ledge, or platform, which contained an air conditioner compressor. She looked down toward the parking lot below, and turned to walk back into the building. She contends that in doing so, the heel of her shoe stuck in between the boards of the platform. As plaintiff attempted to free her heel, she lost her balance and fell to the concrete below. The platform was several feet above the ground and there were no guardrails around its perimeter. Plaintiff suffered a fractured vertebrae and a severely swollen ankle.
The trial court found plaintiff disregarded the warning on the exterior door, moved the obstacles that were placed in front of the door and ventured out on to the platform. The court concluded that although the absence of guardrails around the platform created an unreasonable risk of harm, this omission did not create an unreasonable risk of harm to the plaintiff that was a cause in fact of her injury. Plaintiff appeals.

DISCUSSION
Trial Court's Factual Findings
Plaintiff contends the trial court should not have relied on Foster's testimony concerning the events leading up to the accident because Foster's trial testimony was inconsistent with her earlier deposition testimony. Plaintiff also claims Foster was a biased witness because she was dating the band manager's best friend.
In Rosell v. ESCO, 549 So.2d 840 (La.1989), the Louisiana Supreme Court set forth the standard which shall be used by an appellate court to evaluate the correctness of a trial court's findings of fact:
It is well settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong," and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable.... The appellate review of fact is not completed by reading only so much of the record as will reveal a reasonable factual basis for the finding in the trial court, but if the trial court or jury findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong.... In applying the manifestly erroneous-clearly wrong standard to the findings below, appellate courts must constantly have in mind that their initial review function is not to decide factual issues de novo....
When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said.... Where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon credibility determination.... But where such factors are not present, and a factfinder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.... (citations omitted)
The evidence established that the guests were required to travel behind the bandstand to use the restroom. Plaintiff testified that on her first visit to the restroom, she saw a *296 "sick girl" who apparently had consumed too much alcohol, sitting on the bathroom floor. Plaintiff and her friend, Rebecca English, attempted to assist this individual. She testified that on her second trip to the restroom, she saw the individual lying partially in the hallway and partially in the doorway of the exterior door. According to the plaintiff, after she checked on the sick individual, she walked out the doorway on to the platform because she was curious as to what was outside. Plaintiff testified as she turned to enter the building, the heel of her shoe caught between two of the wooden planks, and as she tried to free her shoe, she stumbled forward and fell off the platform. She further testified that she landed "feet first" and remained on the ground until someone arrived to help her.
English testified she noticed the exterior door was open when she and plaintiff went to the restroom. She testified she did not go to the restroom with plaintiff immediately prior to plaintiff's fall. According to English, when she accompanied plaintiff to the restroom, she saw a sick woman in the hallway leading to the exterior doorway. English was positive the door was open, and there were no barriers in front of the doorway.
Kelly McIntyre, a member of the band, testified he opened the exterior door to ventilate the building. He stated he placed cinder blocks, plywood boards and large cans in front of the opening, but left enough space on both sides for ventilation. He described the door prior to the accident as "completely open with a cinder block against it to keep it from closing."
Kelley Foster testified she was in the restroom with the plaintiff. She testified she observed the plaintiff drinking from a beer bottle and heard her say, "I'm so drunk." According to Foster, plaintiff left the restroom and walked toward the exterior door which led to the platform. She testified plaintiff immediately returned to the restroom and called to her, "Come here, I want to show you something. This is so cool!" According to Foster, she followed plaintiff and observed her unlock a deadbolt latch, open the exterior door and step outside. Foster stated as plaintiff was dancing and waving the beer bottle in the air, she stepped off of the platform and fell to the ground. Foster also testified that there was a sign affixed to the inside of the exterior door which read, "Not An Exit. Do Not Enter."
The trial court was aware of the conflicting statements in Foster's deposition and trial testimony. However, the trial court was also aware of the conflicting and inconsistent statements in plaintiff's deposition and trial testimony. Further, the trial court found plaintiff's testimony concerning the manner in which she fell from the platform inconsistent with her testimony that she landed on her feet when she reached the ground. The trial court found Foster's testimony consistent with plaintiff's account of her fall. It also found Foster's testimony concerning the barriers near the exterior door consistent with McIntyre's testimony.
The trial court emphasized his acceptance of Foster's version of the fall based on her credibility. On this record, and under the dictates of Rosell v. ESCO, supra, we are constrained to affirm this determination unless the trial court's findings are unsupported by the evidence, and thus, clearly wrong. We note that the trial court found the exterior door was already open when plaintiff walked outside. Although this finding is in direct contradiction of Foster's testimony, the record clearly supports the trial court's conclusion in this regard. Each witness who testified to the events prior to the accident, with the exception of Foster, stated that the door was open prior to plaintiff's fall. McIntyre admitted that earlier that night, he opened the door and placed a cinder block behind it to keep it from closing. He described the position of the door as "completely open."
The trial court also found plaintiff ignored the "warning sign." Testimony showed the sign in question was affixed to the door and read: Not An Exit. Do Not Enter. Since we agree with the trial court in its finding that the door was open, we find its conclusion that plaintiff ignored the warning sign was unsupported by the evidence and manifestly erroneous. The evidence establishes that this sign was affixed to the inside of the exterior door. Therefore, this sign *297 would not have been visible to plaintiff if the door was completely opened.
Finally, we note the trial court found plaintiff moved the barriers McIntyre placed at the door. We also conclude this finding is not supported by the evidence and is clearly wrong. The record indicates that at some time earlier that night, McIntyre placed barriers in front of the opening to the exterior door. Neither Foster nor any other witness saw plaintiff move the barriers from the door. Although Foster testified that she saw pieces of plywood, cinder blocks and cans near the area of the door, she specifically stated that there were no barriers in front of the door when the plaintiff walked out on to the platform. In concluding that plaintiff must have moved the barriers from the doorway, the trial court disregarded the possibility that at some time between the time McIntyre barricaded the opening and the time of plaintiff's fall, some other individual moved the barriers from the doorway.[1]

Liability
Plaintiff asserts the theories of strict liability and negligence. She argues the trial court erred in concluding that the lack of guardrails was not the cause in fact of her injuries. Plaintiff also questions the trial court's conclusion that the absence of guardrails from the perimeter of the platform created an unreasonable risk of harm, but the defective condition of the platform was not the cause in fact of her injuries.
A landowner's duty to discover any unreasonably dangerous condition and correct it or warn of its existence is the same under the negligence theory of LSA-C.C. Art. 2315 and the strict liability theory of LSA-C.C. 2317. The difference between the two theories is one of proof. Kent v. Gulf States Utilities Co., 418 So.2d 493 (La.1982); Bradford v. Louisiana Downs, Inc., 606 So.2d 1370 (La.App. 2d Cir.1992). Under a negligence theory, plaintiff must prove the defendant knew or should have known of the risk. Under a strict liability theory, plaintiff is relieved of proving the defendant had knowledge of the risk. Kent, supra; Bradford, supra.
Under either theory, the plaintiff has the burden of proving that: (1) the defendant had custody of the property causing the damage; (2) the property was defective because it had a condition that created an unreasonable risk of harm; and (3) the defect was the cause in fact of the injury. Waters v. McDaniel Recreation Center, 521 So.2d 788 (La.App. 2d Cir.1988), writ denied, 524 So.2d 520 (La.1988).
An owner who transfers possession of his thing that has a defect continues to have custody of the thing and a duty to protect others from harm caused by the defect. Ross v. La Coste de Monterville, 502 So.2d 1026 (La.1987). Therefore, the defendant continues to have custody of the warehouse even though it was rented to the lessees.
The determination of whether a particular condition poses an unreasonable risk of harm requires balancing the intended benefit of the thing with its potential for harm and the cost of prevention. Socorro v. City of New Orleans, 579 So.2d 931 (La.1991); Durkee v. City of Shreveport, 587 So.2d 722 (La.App. 2d Cir.1991), writ denied, 590 So.2d 68 (La.1991). While the platform was used to support the air conditioner unit, the exterior door leading to the platform served no useful purpose because a ladder was always used to repair the air conditioning unit. The platform was 10½ feet above ground level and extended only four feet from the exterior of the warehouse. According to Allen Kelley, plaintiff's expert witness in the field of architecture, the Southern Building Code and the Life Safety Code specify that balconies which are more than thirty inches above the floor or grade level shall have guardrails to prevent falls over the open side. The platform in the instant case did not have guardrails. Further, the exterior door that provided access to the platform could be opened without a key, and people were invited to the warehouse *298 to attend the band's practice sessions. The potential for harm, i.e., invitees falling off the platform after using the door, and the minimal cost of prevention, i.e., adding guardrails, providing a pad lock for the door or permanently sealing the door, outweighs the intended benefit of supporting the air conditioner unit. Therefore, we agree with the trial court's conclusion that the platform created an unreasonable risk of harm.
Our next inquiry is whether the defendant's conduct was a cause in fact of plaintiff's injury. The test for "cause in fact" is whether the conduct complained of was a substantial factor in bringing about the harm. Socorro, supra. This is a "but for" inquiry into the logical consequences of conduct and not into the absurd extremes. Weaver v. Valley Electric Membership Corp., 615 So.2d 1375 (La.App. 2d Cir.1993).
The trial court concluded the lack of guardrails around the perimeter of the platform was not a cause in fact of plaintiff's injuries because plaintiff's conduct was the cause in fact of her injuries. Granted, plaintiff was drinking excessively and imprudently ventured out on the platform of her own volition. However, this accident, like others, had more than one cause in fact. See Weaver, supra. The defendant's failure to secure the platform area with guardrails, coupled with the fact that the open platform area was easily accessible to the guests, was also a cause in fact of plaintiff's injuries.
Under the facts and circumstances of this case, the conduct of both the plaintiff and the defendant contributed to the plaintiff's resulting injury. The defendant's conduct was a substantial factor because the lack of guardrails created an unreasonable risk of harm. The plaintiff's conduct in going out on the platform and in failing to ascertain the safety of her actions while she out on the platform was also a substantial factor in bringing about her injuries.
Our courts have consistently held that a landowner owes a plaintiff a duty to discover any unreasonably dangerous condition and to either correct the condition or warn of its existence. Socorro, supra; Shelton v. Aetna Casualty & Surety Co., 334 So.2d 406 (La.1976). Here, defendant neither corrected the unsafe condition of the platform to conform to the building code nor adequately warned invitees of this dangerous condition.
The record discloses the defendant was aware that individuals were consuming alcoholic beverages on its premises and it permitted them to do so. Although there was a warning sign on the door, the sign was only visible if the door was closed. Defendant knew or should have known that curious individuals, especially those who had been drinking alcoholic beverages, would venture out on the platform. A mere warning that the door was not an exit door was not an adequate warning of the dangerous condition of the platform created by the absence of guardrails. Although there is testimony that some form of barriers were placed in front of the door, these barriers apparently were easy to remove, since they were removed without much effort. Further, the positioning of two pieces of plywood board, paint cans and cinder blocks in front of the doorway would not be an adequate warning that an unreasonably dangerous condition existed on the other side of the door. In sum, we find the defendant failed to take precautions to ensure that its building, which frequently was occupied by a large crowd, was not unreasonably dangerous. This neglect was unreasonable considering the probability and magnitude of the potential harm. See Socorro, supra.
The trial court also concluded the presence of guardrails would not have prevented plaintiff from falling over the edge of the platform. However, the possibility that the accident would have occurred despite the suggested precautions does not break the chain of causation. Dixie Drive It Yourself v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962); Ladner v. Firemen's Ins. Co. of Newark, 519 So.2d 1198 (La.App. 2d Cir.1988). We conclude the trial court was clearly wrong in finding that the defendant was not liable for plaintiff's injuries.
Allocation of Fault
Having found that under the facts and circumstances of this case both parties were at fault, we shall compare plaintiff's conduct *299 with defendant's conduct, allocate the respective percentages of fault and assess plaintiff's damages. LSA-C.C. Art. 2323; Weaver, supra; Morris v. Owens-Illinois, Inc., 582 So.2d 1349 (La.App. 2d Cir.1991), writ denied, 588 So.2d 1119 (La.1991).
In Watson v. State Farm Fire and Cas. Ins. Co., 469 So.2d 967 (La.1985), the Louisiana Supreme Court set forth the following factors to aide in allocating fault: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger; (2) how great a risk was created by the conduct; (3) the significance of what was sought by the conduct; (4) the capacities of the actor, whether superior or inferior; and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought.
Applying these factors, we find defendant was aware of the danger created by the unguarded platform and attempted to prevent individuals from gaining access to the platform. Nonetheless, because of defendant's unjustified conduct, any individual who either intentionally or inadvertently ventured out onto the ten-foot high platform was in danger of falling and sustaining severe injuries. On the other hand, plaintiff did not act prudently. If plaintiff had not been drinking, she probably would have been able to ascertain that the area on the other side of the exterior door was dangerous. The capacity of the defendant to avoid the foreseeable risk that one of the guests would intentionally or inadvertently walk out of this platform was superior to the capacity of the plaintiff.
While any assessment of fault has a degree of arbitrariness, from our review of other cases, and on this record, we believe 65% of the fault in this accident should be allocated to plaintiff and 35% to defendant.

Quantum
When making an initial award of damages, an appellate court is not limited to either the highest or lowest amount of the reasonable range of awards that would be affirmed on appeal. An appellant court's responsibility is to award an amount that is fair and just for the damages supported by the record. Wall v. American Employers Ins. Co., 386 So.2d 79 (La.1980); Morris, supra.
After her fall, plaintiff was transported by ambulance to the emergency room of the Louisiana State University Medical Center and admitted into the hospital. She had a burst fracture of her L-3 vertebra and a sprained left ankle. Surgery was performed to restore the curvature of her spine. Plaintiff's physicians inserted four pedicle screws and a device known as an internal fixator and grafting bone into the burst fracture. Plaintiff was required to wear a corset-like brace for approximately four months following surgery.
In October 1992, eight months after plaintiff's surgery, one of the screws inserted in her back broke, and plaintiff had to undergo another surgery. Dr. Kalia Sadasivan, the orthopedic surgeon who performed plaintiff's surgery, stated that when a screw insert break, a physician recognizes that it is time to remove the screws and fixator device. These objects are only temporarily inserted to restore the curvature of the vertebra. Further, plaintiff was pregnant during this ordeal. Dr. Sadasivan noted that although pregnancy was not contraindicated, plaintiff may have more back pain and difficulty than would be expected in a normal pregnancy.
Dr. Don Burt, the orthopedic surgeon who provided plaintiff's post-operative care, testified that it would take approximately one to one and one-half years from the date of her second surgery for plaintiff to reach maximum medical improvement. He opined that although she will be able to lead a fairly normal life, activities that require a great deal of twisting and bending will be troublesome. After a careful review of the record and the quantum awards in similar cases, we feel an award of $150,000 will compensate plaintiff for her pain and suffering. We also award special damages in the amount of $30,389.33.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is reversed and judgment is rendered as follows:

*300 IT IS HEREBY ORDERED, ADJUDGED AND DECREED that there be judgment in favor of the plaintiff, Julie Rich, and against the defendant, Tench Electric Motor Works, in the proportion of 35% of plaintiff's total recoverable losses of $180,389.33, plus legal interest from date of judicial demand. All costs, here and below, are assessed to appellee, Tench Electric Motor Works.
REVERSED AND RENDERED.
NOTES
[1] We note that plaintiff introduced photographs as plaintiff's exhibit Nos. 16, 17 and 18 which showed the presence of drinking cups and a beer can on the platform. This evidence, when considered in conjunction with the entire record, contradicts the defendant's assertion that no one ever went out on to the platform.