J^MICHAEL E. KIRBY, Judge.
The relator, Jena Apartments, L.L.C., seeks review of a judgment denying its motion for summary judgment. The relator’s motion was heard before the trial court on February 6, 2004. The trial court rendered its judgment on February 17, 2004. We deny the writ application.

FACTS

The instant case arises out of a petition for damages filed by the plaintiffs, David and Amanda Ryan, against the relator and its liability insurance carrier for personal injury damages sustained by plaintiff David Ryan when he fell from a fire escape attached to a building owned by the relator.
On March 15, 2002, plaintiff David Ryan, a roofing contractor, responded to a call from Valerie Marcus, a representative for the relator, to inspect the roof of a house owned by the relator located at 4417-19 St. Charles Avenue in New Orleans, Louisiana for leaks in the structures roofing system. The plaintiff was accompanied on the inspection of the building by two of his employees, Todd and Steve Benoit. The plaintiff, the Benoits and Ms. Marcus began the inspection by accessing the roof of the house through a third floor apartment.
12Upon completion of the inspection of the roof, Ms. Marcus and Steve Benoit descended to the ground level by using an interior staircase. The plaintiff decided to inspect the exterior of the building for leakage through an exterior wall. Todd Benoit accompanied the plaintiff on the exterior wall inspection. Ms. Marcus and Steve Benoit were waiting on the ground near the fire escape for the plaintiff to complete his inspection. To facilitate the exterior inspection, the plaintiff and Mr. Benoit descended a fire escape from the third floor. Upon reaching the second floor platform of the fire escape the plaintiff some how turned and fell seventeen feet landing on a fence surrounding a central air conditioning unit.
Within one year of plaintiff David Ryan’s fall, the plaintiffs filed the petition, from which the instant case arises, alleging negligence under La. Civil Code art. 2315 and a claim for liability based on custody of a thing or building under La. Civil Code arts. 2317.1 and 2322. On November 24, 2003, the relator filed its motion for summary judgment with a supporting memorandum and an affidavit from a safety expert. On January 7, 2004, the plaintiffs filed an opposition to the relator’s motion for summary judgment. The plaintiffs also filed a motion to strike the affidavit of the relator’s safety expert.
On February 6, 2004, the trial court heard arguments on the relator’s motion for summary judgment and the plaintiffs’ motion to strike. On February 17, 2004, the trial court denied both motions.

DISCUSSION

The relator complains the trial court erred in denying its motion for summary judgment because there is no evidence the fire escape presented an ^unreasonable risk of harm; and because there is no evidence the relator knew or should have known of any alleged defect in the fire escape.
Appellate courts review summary judgment de novo, using the same criteria ap *882 plied by the trial courts to determine whether the summary judgment is appropriate. Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181, (La.2/29/2000), 755 So.2d 226, 230.
La. C.C.P. art. 966 provides in part:
A(2) The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969. The procedure is favored and shall be construed to accomplish these ends.
B The judgment sought should be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is not genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.
C (2) The burden of proof remains with the movant. However, if the mov-ant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
La. C.C.P.art. 967 provides in part:
Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that he affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto |4or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or by further affidavits.
When a motion for summary judgment is made and supported as provided above, an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him.
La. Civil Code art. 2315 provides:
A. Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.
B. Damages may include loss of consortium, service, and society, and shall be recoverable by the same respective categories of persons who would have had a cause of action for wrongful death of an injured person. Damages do not include costs for future medical treatment, services, surveillance, or procedures of any kind unless such treatment, services, surveillance, or procedures are directly related to a manifest physical or mental injury or disease. Damages shall include any sales taxes paid by the owner on the repair or replacement of the property damaged.
La. Civil Code art. 2317.1 provides:
The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have *883 been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.
La. Civil Code art. 2322 provides:
The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon [Ra showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.
* * *
Article 2317.1, enacted in 1996, effectively abrogates the concept of “strict liability” in cases involving defective things and imposes a negligence standard based on the owner or custodian’s knowledge or constructive knowledge of the defect. Although article 2317.1’s requirement of constructive knowledge cannot be construed so broadly as to revive the regime of strict liability, it does impose a reasonable duty to discover apparent defects in things under the defendant’s garde. (Citations omitted). Hagood v. Brakefield, 35,570 (La.App. 2 Cir. 1/23/02), 805 So.2d 1230, 1233.
This court in Lofton v. Hayward, 2000-2019 p. 5 (La.App. 4 Cir. 1/9/02), 806 So.2d 877, 882-883 found:
In order to recover in strict liability under Article 2317 or 2322 against the owner of a building, the injured person must prove that the building or its appurtenances posed an unreasonable risk of injury to others, and that his damage occurred through this risk. Upon proof of these elements, the owner is responsible for the damages, unless he proves that the damage was caused by the fault of the victim, by the fault of a third person, or by an irresistible force. The owner is absolved from his strict liability neither by his ignorance of the condition of the building, nor by circumstances that the defect could not easily be detected.
The requirement that an injured person in order to recover under Article 2317 or 2322 must prove that the risk from which his damage resulted posed an unreasonable risk of harm places a limitation on a building owner’s strict liability. He cannot be held responsible for all injuries resulting from any risk posed by his * *6 building, only those caused by an unreasonable risk of harm to others. (Emphasis Supplied).
IfiThe unreasonable risk of harm criterion, however, is not a simple rule of law which may be applied mechanically to the facts of a case. Likewise, strict liability requires the plaintiff to prove that the vice or defect of a thing is a condition which poses an unreasonable risk of harm to others. The unreasonable risk of harm criterion is not a simple rule of law which can be applied mechanically to the facts of a case. Justice and social utility must serve as guideposts and moral, social and economic values must be considered in a determination of whether the risk is unreasonable. Claims and interests should be balanced, risk and gravity of harm should be weighed, and individual and societal rights and obligations must be considered. (Citations omitted).
The relator argues the plaintiffs have failed to show how having an open end on one side of the fire escape was a defect creating an unreasonable risk of harm. To *884 support this argument the relator cites the affidavit of its safety expert, Michael J. Frenzel, who in his sworn statement said: “There is no recognized code or standard which would require the second story landing of the fire escape at issue to have a restraint or chain at the end where the plaintiff fell. The fire escape at issue violates no applicable safety and/or building codes and is in conformance with industry standards.”
To refute the relator’s argument, the plaintiffs aver the fire escape posed an unreasonable risk of harm because the fire escape landing was seventeen feet above the ground; the second story landing did not extend as far as the third story landing above it; there was no railing, no chain, no warning sign, no different colored paint or any other sign to indicate the sudden ending of the landing and the drop to the ground below. The plaintiffs also cite Rich v. Tench Electric Motor Works, Inc., 26,072 (La.App. 2 Cir. 8/19/94), 642 So.2d 293 for the proposition that a platform without a safety railing is an unreasonably dangerous condition. In Rich, a spectator at a music event being held in a warehouse sued the owner after |7she fell from a platform at the rear of the building. The district court entered judgment for the owner and the plaintiff appealed. The appellate court found the trial court was clearly wrong in finding that the owner of the building was not liable for the victim’s injuries. The appellate court assessed the plaintiff 65% of the fault for her injuries and 35% to the owner who had not provided a guardrail or locked door leading to the platform.
The relator further argues if the lack of a guardrail posed an unreasonable risk of harm the risk was obvious, and the plaintiffs experience as a roofer working at heights gave the plaintiff specialized knowledge of dangers of falling from a building. To support this argument the relators cite Pitre v. Louisiana Tech University, 95-1466 (La.5/10/96), 673 So.2d 585. In Pitre, a university student who was paralyzed in a sledding accident on campus and his parents sued the university and its board of trustees. The district court granted summary judgment for the defendants and the plaintiffs appealed. The appellate court reversed and remanded the case denying appellate review. On remand judgment was rendered for the defendants. The plaintiffs appealed. On appeal the trial court was reversed and the plaintiffs were awarded damages. The defendants sought writs from the Louisiana Supreme Court, which the Court granted. The Court reversed the appellate court finding the university had no duty. The Court also noted:
A landowner owes a plaintiff a duty to discover any unreasonably dangerous condition and to either correct the condition or warn of its existence. It is the court’s obligation to decide which risks are unreasonable, based upon the facts and circumstances of each case. Whether a particular risk is unreasonable is a difficult question which requires a balance of the intended benefit of the thing with its potential for harm and the cost of prevention. In making this determination in negligence actions, the “obviousness” and “apparentness” of the | ^complained of condition have historically been taken into consideration.
[[Image here]]
[T]he proper test to be applied in determining a landowner’s liability under articles 2815 and 2316 of the Civil Code is “ ‘whether in the management of his property he has acted as a reasonable man in view of the probability of injury to others,’ ” .... The duty of a landowner is not to insure against the possibility of an accident on his premises, but rath *885 er to act reasonably in view of the probability of injury to others. Thus the landowner is not liable for an injury resulting from a condition which should have been observed by an individual in the exercise of reasonable care or which was as obvious to a visitor as to the landowner.
[[Image here]]
Thus, the obviousness and apparentness of a potentially dangerous condition are relevant factors to be considered under the duty-risk analysis. If the facts of a particular case show that the complained of condition should be obvious to all, the condition may not be unreasonably dangerous and the defendant may owe no duty to the plaintiff. (Citations omitted).
Pitre, at 590 and 591.
The plaintiffs counter that argument by averring, in order for a danger to be obvious that it does not constitute an unreasonable danger, there must be an extreme situation of one-sided fault of the plaintiff. To support their argument the plaintiffs cite DeStevens v. Harsco Corporation, 94-1183 (La.App. 4 Cir. 3/16/95), 652 So.2d 1054. In DeStevens, the widow of a worker who was killed when scaffolding he was on touched an uninsulated powerline. The plaintiff sued the property owner, the scaffolding manufacturer, and the electric utility company operating the powerline. The district court granted summary judgment for the property owner, and the plaintiff appealed. This court held: the landowner owed a duty to warn or remedy the unreasonable danger on the property; the landowner 19had a duty to the deceased worker; and there were genuine issues of material fact as to whether danger from scaffolding and uninsulated powerline was unreasonable and as to whether the landowner fulfilled his duty.
The relator’s last argument is that, even if the condition of the fire escape was an unreasonable risk of harm, the plaintiffs cannot prove the relator had knowledge of the alleged defect. The plaintiffs argue that the relator, through Valerie Marcus, had constructive knowledge of the condition of the fire escape. Ms. Marcus and her family have owned the property, which constitutes Jena Apartments, since the 1960’s; Ms. Marcus lived on the property for seven years; and Ms. Marcus has managed the property since the mid 1980’s. Additionally, the plaintiffs cite Ms. Marcus’ deposition testimony in which she allegedly stated she was aware of the structure of the fire escape prior to the plaintiff David Ryan’s fall.
The questions of whether the relator owed a duty to plaintiff David Ryan to indicate in some way where the fire escape ended; whether the condition of the fire escape should have been obvious to the plaintiff; and whether the plaintiffs experience as a roofing contractor gave him specialized knowledge on the dangers of heights are all questions of fact that make summary judgment inappropriate. Therefore, we deny this writ application.
WRIT APPLICATION DENIED.