705 So.2d 249 (1997)
Becky BISON, Plaintiff-Appellant,
v.
Donald PRIMROSE, et al., Defendants-Appellees.
No. 30011-CA.
Court of Appeal of Louisiana, Second Circuit.
December 10, 1997.
*250 C. William Gerhardt & Associates by C. William Gerhardt, for Plaintiff-Appellant.
Jerald N. Jones, City Attorney, Terri Anderson-Scott, Assistant City Attorney, for Defendant-Appellee, City of Shreveport.
Walter F. Johnson, III, Shreveport, for Defendant-Appellee, Donald Primrose.
Before MARVIN, STEWART and CARAWAY, JJ.
STEWART, Judge.
The plaintiff, Becky Bison, appeals the judgment of the trial court dismissing her claim. The plaintiff urges that the trial court erred in holding that her injury was not caused by a hole in which her horse stumbled, and that the hole did not pose an unreasonable risk of harm, that the defendants had no prior notice of the hole. Additionally, the plaintiff asserts that the trial court erred in failing to award general and special damages to the plaintiff. We affirm.

FACTS
On January 16, 1993, the plaintiff, Becky Bison, (Ms. Bison) was riding her horse, Decka, on the grounds of C. Bickham Dickson Park, in Shreveport, Caddo Parish, Louisiana. Ms. Bison boarded her horse at the park's stables. Decka was at full run when she stepped into a grass-covered hole or depression and threw Ms. Bison to the ground. Ms. Bison sustained injuries as a result of the fall.
The park is owned by defendant, the City of Shreveport, a municipality of the State of Louisiana, and was under lease to defendant Donald Primrose, d/b/a D & R Stables, Inc., at the time of plaintiff's injury.
A bench trial was held on October 14-15, 1996, before Judge Leon L. Emanuel, III, First Judicial District Court, in Shreveport, Caddo Parish, Louisiana. The court held that there be judgment in favor of the defendants, the City of Shreveport and Donald Primrose, and against the plaintiff, Becky Bison, who failed to prove by a preponderance of evidence that the hole in question posed an unreasonable risk of harm. The plaintiff's claim was dismissed at her cost.

A HOLE DID NOT POSE AN UNREASONABLE RISK OF HARM PLAINTIFF'S INJURY WAS NOT CAUSED BY A HOLE
An appellate court may not set aside a trial court's findings of fact in the absence of manifest error or unless the finding is clearly wrong. Lewis v. State, Through DOTD, 94-2370 (La. 4/21/95), 654 So.2d 311; Stobart v. State, Through DOTD, 617 So.2d 880 (La. 1993); Lebeaux v. Newman Ford, Inc., 28,609 (La.App. 2 Cir. 9/25/96), 680 So.2d 1291. The issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the fact finder's conclusion was a reasonable one. Lewis v. State, Through DOTD, supra; Stobart v. *251 State, Through DOTD, supra; Lebeaux v. Newman Ford, Inc., supra.
In assignment of errors numbers one and three, plaintiff asserts that the trial court was manifestly erroneous in holding that a hole or depression did not pose an unreasonable risk of harm and erred in not holding that plaintiff's injury was caused by a hole or depression in which her horse stumbled.
The plaintiff's claim is rooted in La.C.C. Art. 2317 which states: We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody ...
The strict liability imposed by La. C.C. Art. 2317 requires the plaintiff to prove that the vice or defect of the thing is a condition which poses an unreasonable risk of harm to others and that the damage resulted from this vice. A determination of whether a thing presents an unreasonable risk of harm should be made "in light of all relevant moral, economic, and social consideration." Boyle v. Board of Sup'rs, Louisiana State University, 96-1158 (La. 1/14/97), 685 So.2d 1080, 1082; Celestine v. Union Oil Co. of California, 94-1868 (La. 4/10/95), 652 So.2d 1299, at 1304 quoting Entrevia v. Hood, 427 So.2d 1146 (La.1983). Once the plaintiff proves the elements of La.C.C. Art. 2317, the owner or guardian responsible for the person or thing can escape liability only if he shows the harm was caused by the fault of the victim, by the fault of a third person, or by an act of God.
"The obligation placed by article 2317 upon a landowner to maintain his land free from defects does not encompass every injury that happens to occur on his land. Not every minor imperfection or irregularity can be said to be patently dangerous (defective) or to create an unreasonable risk of injury within the parameters of La.C.C. Arts. 2315 and 2317." Maxwell v. Board of Trustees for State Colleges & Universities, 96-1207 (La.App. 3 Cir. 3/19/97), 692 So.2d 641. See Socorro v. City of New Orleans, 579 So.2d 931, (La.1991) Burris v. Insured Lloyds, 417 So.2d 511, 514 (La.App. 3d Cir. 1982). In the absence of a showing of an unreasonably dangerous condition of the thing, there is no duty owed by the owner of the thing under either strict liability or negligence. Oster v. DOTD, 582 So.2d 1285 (La. 1991); White v. Louviere, 95-610, (La.App. 3 Cir. 11/2/95), 664 So.2d 603. The court's duty is to decide which risks are unreasonable. A trial court's finding of whether a condition presents an unreasonable risk of harm is a factual determination which will not be reversed absent manifest error. Maxwell v. Board of Trustees for State Colleges & Universities, supra at 645.
In determining whether a thing poses an unreasonable risk of harm under La.C.C. Art. 2317, many factors are considered, including: (1) the probability of risk occurring, (2) the gravity of the consequences if it does, and (3) the burden of adequate precautions. Verrett v. Cameron Telephone Co., 95-610, (La.App. 3 Cir. 7/2/82), 417 So.2d 1319, 1325-1326, writ denied, 422 So.2d 164 (La.1982). Other related considerations include the social priorities attached to the particular conduct, the degree of culpability assignable to each party's conduct, the economic ability of the parties, their relationship to the instrumentality of injury, the foreseeability of the particular injury had the defect been known, the location of the incident, and the voluntariness or deliberateness with which the victim encounters the risk-creating thing. Verrett v. Cameron Telephone Co., supra at 1326.
In Maxwell v. Board of Trustees for State Colleges & Universities, 96-1207 (La.App. 3 Cir. 3/19/97), 692 So.2d 641, the plaintiff filed suit alleging that she was injured as the result of a fall caused by an allegedly hazardous condition on a state university campus. The Third Circuit Court of Appeal held that the trial court manifestly erred in finding that the area surrounding the sidewalk where the student fell presented unreasonable risk of harm. The sidewalk and curb area enjoy a high societal utility, and the condition in questiondifference in surface height in area between sidewalk and curb did not present risk of harm greater than any risk one might reasonably expect to encounter when walking across a college campus. *252 Maxwell v. Board of Trustees for State Colleges & Universities, supra at 646-647.
Likewise in Boyles v. Board of Supervisors, 96-1158, (La. 1/14/97), 685 So.2d 1080, where the plaintiff was injured in a slip and fall accident allegedly caused by a defect in a sidewalk at Louisiana State University, the Supreme Court made the following utility risk analysis:
"To police this much ground [22 miles of sidewalks] and keep it in perfect repair is beyond reasonable expectation for LSU or any other university." In particular, the court found that while the gravity of harm was great, as the plaintiff sustained serious injuries, the risk of injury was low, as there were no previously reported accidents at that location despite heavy traffic. The court concluded that no unreasonable risk of harm was created.
In the instant case, the plaintiff was very familiar with the pasture and grounds of C. Bickham Dickson Park and had traversed it several times during the period of time that her horse was boarded at the park. The plaintiff testified that she did not actually see the hole or whatever it was that Decka stepped in, that she had not seen a hole before the accident and that she had never seen a hole when the horse was running at a slower pace. The plaintiff had not filed any complaints regarding depressions or holes, nor was evidence introduced to show that any complaints were filed regarding depressions or holes by other users of the facility. The plaintiff did not recall seeing a hole in the area in question before the date of injury. The record contained no photos of the hole or depression in the pasture.
Furthermore, the record, evidence and testimony showed that the only witness to testify as to having seen a hole on the day of the accident was Mr. Chuck Arnold, plaintiff's friend. He testified that when he rode past the plaintiff he did not see a hole or depression but discovered it after he returned to the pasture from the hospital. In regard to Mr. Arnold's testimony, the trial court stated that only one person identified and/or saw a hole and that was Chuck Arnold. "Mr. Arnold's credibility is not in question, for in good faith this Court believes he attempted to find a cause for the accident ... the court takes the totality of the evidence presented, Mr. Arnold's description of the hole was not a preponderance of the evidence for this court to conclude that the depression in the ground created an unreasonable risk of harm."
The plaintiff is required to prove both the existence of the hole or depression and that it presented an unreasonable risk of harm. Although the plaintiff offered the testimony of Mr. James Mohr, a licensed civil engineer and land surveyor, to discuss the area in question, Mr. Mohr testified that he had not performed elevation studies nor surveyed the land in Bickham Park, that he had not made a personal visit to the specific area where the fall occurred and that he had not observed whether a hole or depression actually existed in the area in question. Mr. Mohr testified that his testimony regarding the hole was based upon Mr. Arnold's description of it.
The plaintiff's expert, Margo Smith-Shallcross, a professional horse trainer. testified that a horse can stumble on level ground. Ms. Smith-Shallcross further testified that a good rider will handle a horse that bucks by sitting down in the saddle and back to maintain balance and that the experience of a rider would be a factor in how a horse would react in different situations. Plaintiff testified that she has been horseback riding since she was eight or nine years old. Plaintiff was 38 years old at the time of trial.
In support of its argument of victim fault and third party fault, the City of Shreveport introduced the testimony of Mr. Timothy Wachtel, Planner 3 for the City of Shreveport Department of Parks and Recreation. Mr. Wachtel testified that the plaintiff phoned him after the accident on January 20, 1993 and described the accident to him. Mr. Wachtel testified that he took notes during the conversation in which the plaintiff told him that she had her horse at C. Bickham Dickson Park and had been riding her horse the previous Saturday. Mr. Wachtel also testified that the plaintiff told him "she was riding her friend on their horse came up from behind her and apparently beside her and that spooked or scared her horse. Her horse sped up, bucked and that she had *253 fallen off her horse and suffered some injuries." The plaintiff testified that she contacted someone with the city but could not recall the name of the person to whom she had spoken. Although the plaintiff disputed the date of the call, she did not dispute the substance of the conversation. The plaintiff contends that, if the conversation took place, she was not in her right mind because she had been on morphine and could not remember the conversation.
However, Mr. Arnold testified that the plaintiff "was in a gallop and I had maybe another circle and had come on and was going to run around her. My horse is faster than hers I passed her, and when I passed her was when I heard her scream." The testimony and evidence supports the defendant's defense of victim fault and third party fault.
The area where the fall occurred is a pasture area contained in the 585-acre Bickham Dickerson Park, an open pasture which is not intended or expected to have a completely "tabletop" smooth surface. Like Boyle, supra, to police this much ground and keep it in perfect repair is beyond reasonable expectation. The conduct of the defendants cannot be said to create an unreasonable risk of harm. While some risk may be created by horseback riding on uneven ground, it is not an unreasonable risk especially when coupled with the voluntariness or deliberateness with which the plaintiff encounters the risk-creating thing. The plaintiff testified that she was running the horse full blast in the pasture at the time of the accident.
While the gravity of harm was great as the plaintiff sustained serious injuries, the risk of injury was low, as there were no previously reported accidents at that location despite use by other horseback riders. The public enjoys a high societal utility in having the park available for horseback riding. A depression in the pasture does not present a risk of harm greater than any risk one might reasonably expect to encounter when horseback riding on uneven grounds. The record reveals that because this particular area is dry part of the year and wet part of the year it could cause deterioration. Given Louisiana's soil composition, these conditions are virtually unavoidable.
The activities of a defendant for which he may be held liable without acting negligently are to be determined after a study of the law and customs, a balancing of claims and interests, a weighing of the risk of harm against the magnitude and likelihood of harm, and a consideration of individual and societal obligations. Entrevia v. Hood, supra.
After conducting a review of the record, with our focus upon the customs, standards and patterns of utility, we do not find a depression in this isolated instance to be unreasonably dangerous. The magnitude and likelihood of harm presented by a depression, in this limited instance, does not outweigh the social utility and benefit to society in having the park available to the public for horseback riding. The facts indicate that the magnitude of the risk posed is nominal in comparison with that of other risks presented by things and objects in our society. Accordingly, the plaintiff does not meet the preponderance of the evidence test to show that the grounds of C. Bickham Dickson Park create an unreasonable risk of harm nor that the existence of a depression in this instance was of a magnitude that it would be "unreasonably dangerous."
We are of the opinion that no negligence on the part of the defendants has been shown and that the plaintiff failed to prove both the existence of the hole or depression and that it presented an unreasonable risk of harm. We fail to see that the defendant exposed the plaintiff to any unreasonable risk of harm which is not inherent in horseback riding. We conclude that the city is not liable to the plaintiff under La.C.C. Art. 2317. Inasmuch as we find no liability on behalf of the city, we need not reach the issue of whether the fault of the victim is a defense in the instant case. For this reason, the plaintiff may not recover under the theory of strict liability.
These assignments of error are without merit.

*254 CITY OF SHREVEPORT DID NOT HAVE PRIOR NOTICE
In assignment of error number two, the plaintiff urges that the trial court erred in not holding that the defendant City of Shreveport had prior notice of the hole in which the plaintiff's horse stumbled. Our finding that no defect cognizable under La. C.C. Art. 2317 existed renders unnecessary any discussion of constructive notice under LSA-R.S. 9:2800.
This assignment of error is without merit.

FAILURE TO AWARD SPECIAL AND GENERAL DAMAGES
In assignment of errors number four and five, the plaintiff urges that the trial court erred in failing to award special damages and general damages to the plaintiff resulting from the injuries sustained in the accident.
Because we have found no responsibility or liability on the part of the defendants for the plaintiff's injuries, we pretermit any discussion of damages in this matter.
This assignment of error is without merit.

CONCLUSION
For the foregoing reasons, the judgment of the district court is affirmed.
AFFIRMED.