754 So.2d 339 (2000)
Charles E. GREENE, et ux., Plaintiffs-Appellees,
v.
FOX CROSSING, INC., et al., Defendants-Appellants.
No. 32,774-CA.
Court of Appeal of Louisiana, Second Circuit.
March 1, 2000.
*341 Joseph B. Stamey, Natchitoches, Counsel for Defendants-Appellants.
Roland V. McKneely, Jr., Bossier City, Counsel for Plaintiffs-Appellees.
Before WILLIAMS, CARAWAY and DREW, JJ.
DREW, J.
Defendants, Fox Crossing, Inc. and First Financial Insurance Company, appealed the judgment awarding damages to Charles E. Greene and his wife for injuries suffered by Greene when he was struck by a dead limb which fell from a live tree owned by Fox Crossing, Inc. The jury found the defendants liable and awarded plaintiffs special damages for medical expenses, but no general damages. The judgment included an award for past and future lost wages to which the parties had stipulated. The trial judge granted the Greenes' motion for judgment notwithstanding the verdict and awarded general damages. Defendants argued that the jury erred in finding that the limb was an unreasonably dangerous condition and in rejecting the defense that the limb's falling was an Act of God. Defendants further contended that the trial court erred in granting the Greenes' motion for judgment notwithstanding the verdict and in awarding excessive general damages. The Greenes answered the appeal and asserted that both the jury and the trial court erred in refusing to award damages for injury to Greene's ulnar nerve. The judgment of the trial court is affirmed.

FACTS
A homeowner and resident of Fox Crossing and a member of the association, Greene took a late night walk on August 23, 1993, on common property owned by the homeowners' association of Fox Crossing, Inc. Greene sat down on a swing placed on common property by another homeowner. Shortly thereafter, a dead limb fell from an oak tree and injured Greene.
The Greenes sued Fox Crossing, Inc., and its insurer, First Financial Insurance Co., and alleged both strict liability and negligence. In addition to denying liability, the defendants asserted the affirmative defense of Act of God in their amended answer. At the commencement of the civil jury trial held in November 1998, the parties stipulated that Fox Crossing, Inc. owned the property where the accident occurred and the tree was located. The parties further stipulated that at the time the accident occurred the tree was alive, but the limb which fell had been dead for at least a year. Further, the parties stipulated that the limb fell from a height of at least 20 feet. An additional stipulation by the parties was that the amount of Greene's past and future lost wages was $15,000.
At trial, plaintiffs introduced evidence of Greene's facial and neck injuries caused by the falling limb. The Greenes also presented evidence that after the incident Greene suffered from ulnar nerve neuropathy. Other evidence suggested, however, that Greene had suffered from neurological problems before the incident.
The jury found Fox strictly liable for injuries suffered by Greene from the falling branch. The jury awarded special damages of $7,000 in medical expenses, but awarded no general damages. The judgment also awarded plaintiffs the stipulated amount of $15,000 for Greene's past and *342 future lost wages. Granting the Greenes' motion for judgment notwithstanding the verdict, the trial court fixed general damages at $85,000, but specifically excluded damages for Greene's ulnar nerve condition. When defendants' motion for new trial was denied, the defendants appealed.

APPLICABLE LAW
The "clearly wrong" standard is to be applied to appellate review of fact. Stobart v. State, Through DOTD, 617 So.2d 880 (La.1993); Dorthlon v. St. Francis Medical Center, Inc., 28,426 (La.App.2d Cir.6/26/96) 677 So.2d 654. This court may not set aside a trial judge or jury's finding of fact unless that finding is manifestly erroneous or clearly wrong. To reverse a judge or jury in its finding of fact, we must find, after a review of the entire record, that there is no factual basis for its finding, and that the finding is clearly wrong or manifestly erroneous. The issue is not whether the trier of fact was right or wrong, but whether the conclusion was reasonable. Stobart v. State Through DOTD, supra; Dorthlon v. St. Francis Medical Center, Inc., supra.
When the fact finder's conclusions are based on determinations regarding credibility of the witnesses, the manifest error standard demands great deference to the trier of fact, because only the trier of fact can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Rosell v. ESCO, 549 So.2d 840 (La.1989); Rich v. Tench Elec. Motor Works, Inc., 26,072 (La.App.2d Cir.8/19/94), 642 So.2d 293.

DISCUSSION

Liability
Strict liability is based on La. C.C. art. 2317, which provides, in pertinent part:
We are responsible, not only for the damage occasioned by our own act, but for that which is caused by ... the things which we have in our custody.
In order to recover in strict liability under La. C.C. art. 2317 against Fox Crossing, Inc., the Greenes had to prove by a preponderance of the evidence that: (1) the thing complained of had a vice or defect; (2) the defect presented an unreasonable risk of harm to others; (3) the thing was in the defendant's custody, and (4) damage was caused by the defect. Spott v. Otis Elevator Co., 601 So.2d 1355 (La.1992); Dorthlon v. St. Francis Medical Center, Inc., supra. Once a plaintiff has proven the elements of La. C.C. art. 2317, the owner or guardian responsible for the thing can escape liability if he shows the harm was caused by the fault of the victim, by the fault of a third person, or by an Act of God. Bison v. Primrose, 30,011 (La.App.2d Cir.12/10/97), 705 So.2d 249, writ denied, 98-0090 (La.3/13/98), 713 So.2d 471.
In determining whether a thing poses an unreasonable risk of harm under La. C.C. art. 2317, many factors are considered, including: (1) the probability of risk occurring, (2) the gravity of the consequences if it does, and (3) the burden of adequate precautions. Additional considerations include the social priorities attached to the particular conduct, the degree of culpability assignable to each party's conduct, the economic ability of the parties, the relationship of the parties to the instrumentality of injury, the foreseeability of the particular injury had the defect been known, the location of the incident, and the voluntariness or deliberateness with which the victim encounters the risk-creating thing. Bison v. Primrose, supra.
Defendants stipulated custody of the tree and did not dispute that the limb was defective. Greene suffered significant injuries when the limb fell on him. Defendants argued that the jury erred in finding that the limb was an unreasonably dangerous condition. Defendants pointed out that trees have obvious social and economic utility, including producing oxygen, providing *343 cooling shade, and offering esthetic pleasure. They contend that the product of the likelihood of injury from being struck by a limb multiplied by the gravity of harm sustained by one standing under the branch is quite low when compared to the social and economic utility of trees. Since everything in life comes with some degree of risk, defendants maintained that any risk posed by the dead branch was reasonable.
The Greenes countered that the magnitude of the risk and the likelihood of harm posed by the defective tree limb was great. The tree in question was located beside a paved walkway that ran through the common ground. Greene was stuck by the limb while occupying a swing only two feet from the walkway. The surroundings of the swing were described as being near a playground where children played and people often walked. In the Greenes' view, even a cursory, periodic inspection by grounds keepers would have identified the dead limb, which could have been removed at negligible cost.
The jury specifically found that this limb in this location created an unreasonable risk of harm. It is well settled that a jury's findings of fact are entitled to great deference and should not be disturbed unless those findings are manifestly erroneous or clearly wrong. Rosell v. ESCO, supra. Based on the trial testimony and the evidence presented, the jury's finding was reasonable. We find no manifest error in their conclusion.

Act of God Defense
Alternatively, the defendants urged that they had no liability because the falling limb was an Act of God which relieved defendants of any liability for the damages sustained. Since falling limbs are a fact of nature, defendants maintained that this process of nature is an Act of God which relieves defendants of liability.
In Caldwell v. Let The Good Times Roll Festival, 30,800 (La.App.2d Cir.8/25/98), 717 So.2d 1263, 1272, writ denied, 98-2489 (La.11/25/98), 729 So.2d 566, this court stated:
An Act of God in common law terminology is a concept similar to the civilian doctrine of force majeure, a superior or irresistible force that is, in the legal sense, sufficient to excuse a defendant's neglect of a duty and relieve him of liability to a plaintiff. This concept, or defense, which excuses a defendant from liability, has been defined as:
a providential occurrence or extraordinary manifestation of the forces of nature which could not have been foreseen and the effect thereof avoided by the exercise of reasonable prudence, diligence and care or by the use of those means which the situation renders reasonable to employ.
An Act of God is an unusual, extraordinary, sudden, and unexpected, manifestation of the forces of nature which man cannot resist. The fact that no human agency can resist an Act of God renders misfortune occasioned solely thereby a loss by inevitable accident which must be borne by the one upon whom it falls....
An injury caused by an Act of God is an injury due directly and exclusively to natural causes which could not have been prevented by the exercise of reasonable care and foresight. Recovery for injuries caused by extreme weather conditions may be precluded by the application of this rule. (citations omitted)
The jury found that the defendants failed to carry their burden of proving this affirmative defense. We do not find this conclusion manifestly erroneous. The parties stipulated that the limb had been dead for at least one year. The jury could reasonably have found that the dead limb's falling could have been foreseen and that the damaging effects of the fall could have been avoided by the exercise of reasonable care and foresight. We do not find that the jury erred in rejecting the Act of God defense.

*344 JNOV

The trial court properly granted the Greenes' motion for judgment notwithstanding the verdict. It is error for a jury to award special damages and refuse to award any amount of general damages. Brantley v. General Motors Corp., 573 So.2d 1288 (La.App. 2d Cir.1991), writ denied, 577 So.2d 17 (La.1991). A judgment notwithstanding the verdict is a procedural device for raising or lowering an unreasonable damage award and should be granted only when the evidence points so strongly in favor of the moving party that reasonable men could not have reached a different conclusion. La. C.C.P. art. 1811; Sumrall v. Sumrall, 612 So.2d 1010 (La. App. 2d Cir.1993).
The jury erred in failing to award plaintiffs general damages. Asserting that the jury must have concluded that Greene's injuries were minimal, the defendants advanced no specific legal argument to support their assertion that no general damages were appropriate. Since it is error for a jury to award special damages and to deny recovery for any amount of general damages, the trial court properly granted the Greenes' motion for judgment notwithstanding the verdict.

Quantum
General damages are those which may not be fixed with pecuniary exactitude. Odom v. Claiborne Electric Co-op, Inc., 623 So.2d 217 (La.App. 2d Cir.1993), writ denied, 629 So.2d 1171 (La. 1993). A trier of fact has great discretion in fixing general damages. A trial court's award of general damages should not be overturned by a reviewing court absent an abuse of discretion. Coffin v. Board of Supervisors of Louisiana State University, 620 So.2d 1354 (La.App. 2d Cir.1993).
The defendants urged that the $85,000.00 general damages award was excessive and not justified by the evidence. General damages involve mental or physical pain or suffering, inconvenience, loss of intellectual gratification or physical enjoyment, or other losses of life or lifestyle which cannot be definitively measured in monetary terms. Odom v. Claiborne Electric Co-op, Inc., supra. When damages are insusceptible of precise measurement, much discretion is left to the trial court for the reasonable assessment of these damages. La. C.C. art. 1999. Spurrell v. Ivey, 25,359 (La.App.2d Cir.1/25/94), 630 So.2d 1378. An appellate court should rarely disturb an award for general damages. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), U.S. cert. denied; Spurrell v. Ivey, supra. Only if an award is first found to be inadequate or excessive on the facts of the particular case may the appellate court refer to the awards in "similar" cases. Spurrell v. Ivey, supra.
Arguing the general damage award is not supported by the evidence, defendants acknowledged that Greene sustained lacerations on his face and neck, but contend that the resultant scarring is minimal. They further argued that Greene had a hospital stay of only two days and required very little medical treatment. Defendants stressed that Greene saw his treating plastic surgeon, Dr. Barron O'Neal, only four times in 1993 and did not see him again until August of 1997. Defendants argue that Greene had little, if any, medical treatment for any medical conditions related to the accident.
The trial court's award is well supported by this record. In addition to a complex laceration of the left eyelid, Greene suffered a severe laceration on the left side of his face, where his torn flesh was peeled down. He also had a puncture wound at the base of his neck caused by piece of wood embedded in his flesh. Greene testified that he bled profusely and experienced great pain after the incident. Greene immediately sought treatment at a hospital emergency room, where Dr. O'Neal was called to assist. Dr. O'Neal later performed a two-hour surgical procedure on Greene, during which he removed several pieces of wood from Greene's wounds. Dr. O'Neal estimated that closing *345 Greene's wounds required approximately 150 to 175 sutures. Greene sustained permanent scarring which Dr. O'Neal stated could be improved but not eliminated by plastic surgery.
Greene testified that following the accident he experienced impairment of vision, increased sinus problems, and difficulties with his jaw. He stated that he has discontinued long-term use of his contact lenses because his left eye no longer irrigates itself properly. Due to the sensitivity of the scars to sunlight, Greene stated his enjoyment in his favored pastime of fishing has been diminished.
The trial court stated that Greene was seriously injured, had endured great pain and was fortunate to be alive. The blow peeled off a good portion of his face and a limb the size of a thumb was jammed into his neck. The trial court observed the considerable permanent scarring which restricted Greene's outside activities due to sun sensitivity. Giving due deference to the trial court's vast discretion, we cannot say that the general damage award was excessive and an abuse of discretion.

Alleged Ulnar Nerve Injury
In the Greenes' answer to this appeal, they argued that the trial court erred manifestly in refusing to award damages for Greene's ulnar nerve condition. The Greenes maintained that the evidence established that Greene suffered damage to his left ulnar nerve in the accident. They acknowledged that Greene complained of pain and abnormal sensation in his hands before the incident, but urged that following the incident he experienced significantly different symptoms. Approximately two months before the incident, Greene sought a medical evaluation due to concerns about tingling in his hands and feet. Dr. David Adams examined Greene, specifically testing the sensory, but not the motor, portion of Greene's ulnar nerve. At the conclusion of his examination, Dr. Adams found no evidence of injury, disease or disruption of the nerves in Greene's arms or hands.
The Greenes contend that immediately following the incident Greene noticed that his left hand was numb. The attending emergency room physician recorded that Greene complained of numbness in his left arm. Dr. O'Neal and a consulting physician also recorded that Greene complained of numbness or paresthesia in his left arm and hand. Greene testified that since the incident he has suffered persistent numbness in the ring and little fingers of his left hand. The Greenes argue that considering the entire record the evidence clearly shows that the falling branch injured his left arm; therefore, the trial judge erred in failing to award damages for an ulnar nerve injury.
According to the defendants, Greene's neurological difficulties preceded the incident and were not worsened by the blow from the limb. They noted that when Greene saw Dr. Adams two months before the incident, Greene was already complaining of tingling in all of his fingers and all of his toes. Defendants stressed that Greene did not visit Dr. Adams again until almost a year after the accident and that his third visit was not until approximately three years later.
Disputing the Greenes' assertion that a blow from the limb must have caused the ulnar nerve condition, the defendants rely upon the testimony of Dr. Gordon Mead, an expert witness in the field of orthopedic medicine. After reviewing Dr. O'Neal's reports and examining Greene, Dr. Mead opined that he did not believe that Greene's ulnar nerve neuropathy was related to the accident. Dr. Mead testified that an ulnar nerve problem frequently has no demonstrable cause, but rather is a condition which "just happens." Dr. Mead also testified that if a blow is significant enough to cause ulnar nerve neuropathy, the blow would normally leave some objective sign of trauma, such as bruising or swelling. Dr. Mead stated Greene's medical records reflected no objective evidence of trauma.
*346 After a thorough review of the record, we are not persuaded that the judgment excluding an award for Greene's ulnar nerve condition was manifestly erroneous or clearly wrong. We agree with the trial court's finding that a reasonable jury could have determined that the ulnar nerve problem was unrelated to the blow from the limb.

DECREE
For the reasons expressed herein, the judgment is affirmed at defendants' costs.
AFFIRMED.