h STEWART, J.
Rachel Medlin (“Medlin”) and Francis Sullivan (“Sullivan”) brought suit against the State of Louisiana through the Department of Public Safety and Corrections (“State”), as employer of State Trooper G.J. Pleasant (“Trooper Pleasant”), and Harold Murphy (“Murphy”) and his employer, Richmond Automotive, for injuries arising out of an automobile accident. Murphy and Richmond settled with the plaintiffs before trial. After a trial on the merits, the jury rendered a verdict in favor of the plaintiffs. The jury allocated fault 80% to Medlin, 15% to Trooper Pleasant, and 5% to Murphy. Francis Sullivan was *1279 also assessed with 50% fault for riding with an intoxicated driver. No general damages were awarded by the jury, but it did award special damages. The plaintiffs asked for a JNOV which was granted by the trial court awarding general and special damages, subject to a reduction for comparative fault as assessed by the jury. Each party appeals the judgment of the trial court allocating fault between them and the award of damages. For the reasons that follow, reverse and render.
FACTS
In the early morning hours of December 17, 1998, the Madison Parish Sheriffs office was advised that a car had been abandoned in a ditch on Highway 80 east of Tallulah. Trooper Pleasant was dispatched to the scene, where he was joined by Madison Parish Deputy, Quentin Purvis (“Deputy Purvis”). Trooper Pleasant searched the vehicle and the immediate vicinity to determine whether the vehicle was occupied, but he found no occupant. Trooper Pleasant radioed Troop F Headquarters to request a tow truck be dispatched to the scene to recover the abandoned vehicle. Richmond | ^automotive was sent to the scene to recover the vehicle. Murphy was the tow truck operator for Richmond Automotive. When Murphy arrived at the scene Trooper Pleasant was the only officer there because Deputy Pur-vis had left to continue patrolling on Highway 80.
Murphy’s tow truck had orange overhead four-way lights and beacons, headlights, emergency/hazard flashers, and orange cargo lights all activated. According to Murphy, every light on the tow truck was operating and “flashing like a Christmas tree.” To pull the vehicle out of the ditch, Murphy was required to position the tow truck at a forty-five degree angle in the westbound lane. The front passenger side tire of the tow truck was near the center line of the two lane, undivided highway. Orange cones were also placed on the highway around the tow truck and near the scene.
While Murphy was hooking up the vehicle, Trooper Pleasant had his patrol car positioned on the highway with its emergency lights activated. Once Murphy pulled the vehicle out of the ditch and onto the highway, Trooper Pleasant left the scene to search down Highway 80 for the possible driver of the abandoned vehicle.
After Trooper Pleasant left the scene, he received a radio call from Deputy Purvis advising him that he was in pursuit of a suspected drunk driver going westbound on Highway 80 swerving from ditch to ditch. Deputy Purvis had been in pursuit of the vehicle, sometimes traveling as much as 100 miles per hour, and he requested that Trooper Pleasant stop and wait on Highway 80 to intercept the vehicle. As Deputy Purvis pursued the vehicle, it collided with Murphy’s tow truck which was still ^positioned on the highway with all of its lights flashing. Deputy Pur-vis testified that he saw no brake lights activated on the vehicle before it collided with the tow truck. He also said that no skid marks were left, and that the suspect vehicle never left its lane of travel before impact.
Rachel Medlin, the driver of the suspect vehicle, had a blood alcohol of .216, more than twice the legal limit. Medlin was later charged with DWI, and pled guilty. The passenger in the vehicle, Francis Sullivan, had a blood alcohol content of .210. Both women had been to a Christmas party in Vicksburg hosted by their employer, Isle of Capri Casino, where they worked as cocktail waitresses. According to Med-lin, she never saw the tow truck. Deputy Purvis and Trooper Pleasant determined that Medlin and Sullivan were intoxicated *1280 because of the stench of alcohol in their vehicle and on their breath, and their slurred speech. Medlin failed the horizontal gaze nystagmus test administered by Trooper Pleasant.
Sullivan and Medlin filed suit against Murphy Richmond Automotive, Trooper Pleasant, and the State, as employer of Trooper Pleasant. Initially, Sullivan also filed suit against Medlin, but the lawsuit was dismissed prior to trial. The remaining lawsuits were consolidated for trial. Before trial, Murphy and Richmond Automotive were released as a result of the settlement with both plaintiffs. After a trial on the merits, the jury rendered a verdict in favor of the plaintiffs. The jury allocated fault 80% to Medlin, 15% to Trooper Pleasant, and 5% to Murphy. The jury also found Francis Sullivan negligent for riding with an intoxicated driver and assessed her negligence at 50% under La. C.C. art. 2323. No general Rdamages were awarded by the jury, but it did award special damages. The plaintiffs asked for a JNOV which was granted by the trial court awarding general and special damages, subject to a reduction for comparative fault as assessed by the jury.
Medlin was awarded $50,000.00 for general damages, $6,856.44 for past medical expenses, $55,000.00 for future medical expenses, and $7,530.00 for lost wages, for a total award of $119,386.44. The judgment reduced the award against the State and Trooper Pleasant to reflect the jury’s assessment of 15% fault against Trooper Pleasant, for a total award against the State in the amount of $17,907.97.
Sullivan was awarded $100,000.00 for general damages, $49,450.65 for past medical expenses, and $5,140.00 for lost wages, for a total award of $154,590.65. The court then reduced the award by 50% to $77,295.33 to reflect the its assessment of 50% fault to Sullivan. This appeal ensued.
DISCUSSION

Standard of Review

A court of appeal may not set aside a jury’s finding of fact in the absence of “manifest error” or unless it is “clearly wrong.” Thus, to reverse a trial court, the appellate court must find that a reasonable factual basis does not exist for the finding, and further, that the finding is clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989).
The State argues that the jury erred in its finding that Trooper Pleasant was 15% at fault for the accident at issue. The State further argues that the intoxication of Sullivan and Medlin was the sole cause of the | saccident at issue, and that Trooper Pleasant was not negligent in his actions at the scene.
Negligence is determined in Louisiana under the duty-risk analysis. The determination of liability in a negligence case usually requires proof of five different elements: (1) proof that the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) proof that the defendant’s conduct failed to conform to a specific standard (the breach element); (3) proof that the defendant’s substandard conduct was a cause-in-fact of the plaintiffs injuries (the cause-in-fact element); (4) proof that the defendant’s substandard conduct was a legal cause of the plaintiffs injuries (the scope of liability or scope of protection element); and (5) proof of actual damages (the damages element). Boykin v. La. Transit Co., Inc., 96-1932 (La.3/4/98), 707 So.2d 1225, reh’g denied, (4/24/98); Toston v. Pardon, 36,880 (La.App.2d Cir.5/14/03), 847 So.2d 119.
In deciding this case through the application of the duty-risk analysis, we first examine the issue of the duty of *1281 Trooper Pleasant owed by Medlin and Sullivan. The supreme court noted in Syrie v. Schilhab, 96-1027 (La.5/20/97), 693 So.2d 1173, that the legislature has given law enforcement officers the exclusive power to regulate traffic. The public has a corresponding obligation to follow traffic regulations. Law enforcement officers are duty bound to exercise this power reasonably to protect life and limb and to refrain from causing injury and harm. Syrie, supra. When a law enforcement officer becomes aware of a dangerous traffic situation, he has an affirmative duty to see that motorists are not subjected to unreasonable | ¿risks of harm. Syrie, supra, citing Monceaux v. Jennings Rice Drier, Inc., 590 So.2d 672, 675 (La.App. 3d Cir.1991). The Syrie court also noted that the scope of an officer’s duty to act reasonably under the circumstances does not extend so far as to require that the officer always does the “best” or even a “better” method of approach.
Next, we must determine whether Trooper Pleasant breached this duty. The record shows that while the abandoned vehicle was being pulled from the ditch by Murphy, Trooper Pleasant had his vehicle positioned on the highway with his lights flashing to warn oncoming traffic. After Murphy pulled the vehicle safely onto the highway, Trooper Pleasant left the scene to look for the driver of the abandoned vehicle. At this time, the emergency lights on the tow truck were flashing.
Law enforcement officers are required to take reasonable measures, not the “best” measures, to secure an accident scene. The duty owed by Trooper Pleasant in connection with the recovery operation at issue in the instant case was initially set forth by the Louisiana Supreme Court in Blair v. Tynes, 621 So.2d 591 (La.1993) and Syrie v. Schilhab, 96-1027 (La.5/20/97), 693 So.2d 1173 as follows:
... the legislature has given law enforcement officers the exclusive power to regulate traffic and the public has a corresponding obligation to follow traffic regulations. Law enforcement officers are duty bound to exercise this power reasonably to protect life and limb and to refrain from causing injury or harm. When a law enforcement officer becomes aware of a dangerous traffic situation, he has the affirmative duty to see that motorists are not subjected to unreasonable risks of harm ... the scope of an officer’s duty is to choose a course of action which is reasonable under the circumstances. In other words, the scope of an officer’s duty to act reasonably under the circumstances does not extend so far as to require |7that the officer always choose the “best” or even a “better” method of approach.
The State contends, and we agree, that Trooper Pleasant acted within the scope of his duty and engaged in a course of action that was reasonable under the circumstances, because the recovery scene did not present an unreasonable risk of harm to a motorist exercising ordinary care. We find that the recovery scene did not present a risk of harm such that Trooper Pleasant would have a responsibility to remain at the recovery scene and position his car east of the recovery scene and the curve because the accident scene was not at a dangerous location. There was only a slight curve east of the scene. In fact, another vehicle passed by the scene prior to the accident without incident. Moreover, the tow truck had all of its emergency flashers operating at all times. With the benefit of hindsight, plaintiffs’ argue that many other things could have been done, but it is clear that none of them would have averted the accident because the plaintiffs were too intoxicated to observe the scene. The crux of this issue is *1282 not whether or not Trooper Pleasant could have done something different, but whether his conduct was unreasonable under the circumstances of this case. We find that his actions were at the scene were not unreasonable or a breach of his duties to motorists.
According to the testimony of accident reconstruction expert, Raymond Bur-kart, an eastbound motorist had an unobstructed view of the recovery scene and the emergency lights for at least 669 feet. Despite the testimony of the plaintiffs’ expert that a driver could not determine that a truck was in the oncoming lane until 250 feet, the evidence shows that 18MedIin never attempted to stop. The plaintiffs’ defense is predicated on the idea that Medlin did not have enough time to attempt to stop, but the fact that she never attempted to stop destroys that theory. A motorist has a duty to exercise reasonable care in the operation of the vehicle, which includes the duty to keep his vehicle under control and to maintain a proper lookout at all times. Williams v. City of Monroe, 27,065 (La.App.2d Cir.7/3/95), 658 So.2d 820.
We find that Medlin’s severe intoxication was the sole cause of the accident. Nothing in the record, other than her intoxication can explain why she never saw the flashing lights on the tow truck. Site obstruction was ruled out as a potential explanation because Deputy Purvis saw the emergency lights as he followed along behind Medlin.
According to the uncontradicted testimony of a toxicologist presented by the state, the level of intoxication of the plaintiffs was “very, very, high” and would severely alter visual acuity. To a driver with .216 blood alcohol content, flashing lights may not look like they are flashing. Some people cannot walk and their speech is slurred. Worse still, they are unable to adequately judge distances.
Lastly, the scope of protection afforded by the duty of Trooper Pleasant did not include the risk that a severely intoxicated motorist would not see the emergency lights of the tow truck. The risk that a severely intoxicated driver would fail to observe the flashing lights on the tow truck while being pursued as a drunk driver at speeds over 100 miles per hour is not a risk that is within the scope of reasonable care owed by Trooper | ¡¡Pleasant. La. R.S. 14:98 makes it a criminal offense to drive while intoxicated. Our law seeks to deter such conduct, not to protect those who engage in it. To allow Medlin to recover in light of her wanton and reckless conduct is contrary to the law and a violation of public policy. As a result, we reverse the jury’s allocation of fault of 15% to Trooper Pleasant and 5% to Harold Murphy and reduce the defendant’s fault to 0%. We increase Rachel Medlin’s liability for her negligence from 80% to 100%.

JNOV

We now turn to the trial court’s grant of Sullivan’s motion for JNOV following the jury’s verdict. A JNOV is a procedural device authorized by La. C.C.P. art. 1811 whereby the trial court may correct a legally erroneous verdict by modifying fault or damages, or both, that the jury may have assessed. Matthews v. Arkla Lubricants, Inc., 32,121 (La.App.2d Cir.8/18/99), 740 So.2d 787; Greene v. Fox Crossing, Inc., 32,774 (La.App.2d Cir.3/1/00), 754 So.2d 339, writ denied, 2000-0944 (La.5/26/00), 762 So.2d 1108. The motion should be granted only when the evidence points so strongly in favor of the party seeking the JNOV that reasonable men could not reach different conclusions. Greene v. Fox Crossing, Inc., supra. We find that court erred as a matter of law when it granted Francis Sullivan’s motion for JNOV and reduced the jury’s assignment of liability to Sulli *1283 van from 100% to 50%. Although Sullivan was a passenger in a vehicle being driven by an intoxicated driver, she is completely responsible for any injuries she suffered.
ImUnder La. C.C. art. 2323, “if a person suffers injury, death, or loss as a result of the fault of another person or persons, the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death, or loss.” Because we find that the State is 0% responsible for the accident, we also conclude that the State is 0% responsible for Sullivan’s injuries and that the jury did not err by assessing Sullivan 100% fault for riding with an intoxicated driver.
CONCLUSION
We find that the intoxication of the plaintiffs, Rachel Medlin and Francis Sullivan, was the sole cause of the accident at issue and the resulting injuries. The record is clear that regardless of whether it would have been the blue and red flashing lights of the police car or the yellow warning fights of a tow truck, the plaintiffs were simply too inebriated to appreciate the location of either, as evidenced by their failure to take any evasive action before colliding with the wrecker. Consequently, we reverse the trial court’s finding of fault of 15% as to Trooper Pleasant and 5% as to Harold Murphy and reduce them to 0%, thereby reversing any award of damages to the plaintiffs. We also reverse the jury’s finding of 80% fault to Rachel Med-lin and increase it to 100%. Finally, we reverse the trial court’s grant of Sullivan’s motion for JNOV and increase her fault for her injuries from 50% to 100%. Costs to be shared equally among the parties.
REVERSED AND RENDERED.