1, STEWART, J.
Plaintiff, Teresa Cooper Williams (“Williams”), appeals the jury’s finding of no negligence on the part of defendants, State of Louisiana through the Department of Social Services (“DSS”) and Bettie Adger (“Adger”), in the death of her daughter, Jessie Cooper (“Jessie”), and the trial court’s denial of her JNOV. For the reasons expressed herein, we affirm.
FACTS
This wrongful death action followed the drowning death of fourteen year old Jessie on May 29, 2000. Jessie had been in the custody of DSS since April 6, 1999, after she was temporarily removed from the custody of her mother, Teresa Williams. In early May 2000, Jessie had an accident on the school bus when she suddenly lost control of her muscles and fell down. She was hospitalized at LSU Medical Center and diagnosed with Myasthenia Gravis, a disease similar to muscular dystrophy which causes a weakness in the muscles. This condition caused Jessie several problems, including fatigue and occasional difficulty putting on her clothes and combing her hair. Jessie was under the care of Dr. Amanda Fernandez of LSU. After the initial hospitalization Jessie had a follow up visit on May 24, 2000, where Dr. Fernandez prescribed medication and warned her to avoid excessive fatigue and exposure to heat. Adger, Jessie’s foster mother, sought further clarification of Jessie’s condition, but she did not receive the information until after the accident.
On the day of the accident, Adger had taken Jessie and three other girls, ranging from fourteen to sixteen years of age who also were in her | ¡¡custody, to Cypress Lake to have a Memorial Day picnic as a reward for good behavior. When they arrived at the lake, Adger began to set up the picnic area and allowed Jessie to accompany the other girls while they waded in the water. Apparently, the girls thought the water was too dirty and nasty to actually swim. Her only stipulation to Jessie was that she return within the hour to receive her scheduled dose of medicine. Within fifteen minutes of the girls going to the lake, Jessie was found unconscious in the water. She later died. No one observed what happened or how she drowned.
Williams filed suit against DSS, Adger, the DSS supervisor, Quiller Capers (“Capers”), and DSS case worker, Beverly Wilson (“Wilson”). Trial was held on March 3 and 4, 2003. At the close of trial Williams voluntarily dismissed her claims against Wilson and Capers individually. The jury returned a unanimous verdict for the defendants, answering “no” to the question, “Do you find that Bettie Adger was negligent and that her negligence was the legal cause of the accident?”[1] Williams then filed a Motion for Judgment Notwithstanding the Verdict (“JNOV”) or Motion for New Trial, which were denied by the trial court on May 24, 2003. This appeal ensued.
DISCUSSION

Standard of Review

A court of appeal may not set aside a jury’s finding of fact in the absence of manifest error or unless it is clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989). Reversal of findings of fact on appeal requires that (1) the appellate court find from the record that no reasonable *911 factual basis exists for the trial court’s finding, and (2) the appellate court determine that the record establishes the finding is clearly wrong or manifestly erroneous. Stobart v. State, through DOTD, 617 So.2d 880 (La.1993). Where there is conflict in the testimony reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. If the trial court’s findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that, had it been sitting as the trier of fact, it would have weighed the evidence differently. Stobart, supra; Rosell, supra.
Our review of the record leads us to the conclusion that the jury’s findings were not manifestly erroneous and the trial court did not err in not granting the Motion for JNOV or Motion for New Trial. The evidence shows that Adger was a caring and conscientious person who was genuinely concerned about the welfare of those entrusted to her care. Quiller Capers testified of Adger’s exemplary record as a foster mother. When confronted with the added difficulty of Jessie’s disease, she attempted to ascertain the nature of Jessie’s condition from Dr. Fernandez and give Jessie the best care possible. Adger stringently adhered to the medication schedule. Adger also testified that Dr. Fernandez never gave her anything in writing specifically detailing the limits on Jessie’s physical activities. In fact, Adger sent a facsimile to Dr. Fernandez on May 26, 2000, asking for further guidance in Jjher treatment of Jessie. Dr. Fernandez claimed that she specifically warned Jessie on May 24, 2000, that she was not to swim. However, the only documentation given by Dr. Fernandez on the limits on Jessie’s physical activities was given in a letter dated June 2, 2000, in response to the facsimile of May 26, after the accident, and after Dr. Fernandez was made aware of the accident. The jury apparently made a credibility determination that Adger did all that she could to protect Jessie, and that Dr. Fernandez’s letter was an attempt to cover her bases after the fact.
The record shows that the children went down to the lake to wade in the water. No one witnessed what happened to Jessie. It is not known whether she had a seizure from the myasthenia gravis or some other accident. Adger testified that the medicine had been working well for Jessie and that she had no problems with her motor skills. Adger testified that had she known of a restriction against being in a pool or lake, she would not have allowed Jessie to get in the water. The wading activity was not prohibited by Dr. Fernandez, who actually testified that wading would have been acceptable if Jessie had been watched.
Assuming arguendo that Adger was negligent in taking Jessie to the lake, it is impossible to determine if that negligence can be said to be the cause in fact of the injury. Of critical importance is the fact that Dr. Fernandez testified that he could not say that the reason Jessie had an accident was because of her Myasthenia Gravis. Consequently, there is a critical issue of whether her condition was even the cause in fact of her death.
IsAs a result, we cannot say that the jury’s determination of no negligence on the part of Adger was manifestly erroneous.

JNOV

A JNOV is a procedural device authorized by La. C.C.P. art. 1811 whereby the trial court may correct a legally erroneous verdict by modifying fault or damages, or both, that the jury may have assessed. Matthews v. Arkla Lubricants, *912 Inc., 32,121 (La.App.2d Cir.8/18/99), 740 So.2d 787; Greene v. Fox Crossing, Inc., 32,774 (La.App.2d Cir.3/1/00), 754 So.2d 339, writ denied, 2000-0944 (La.5/26/00), 762 So.2d 1108. If the opposing evidence is of such quality and weight that reasonable men in the exercise of impartial judgment might reach different conclusions, the motion should be denied. To determine that the evidence was insufficient as a matter of law requires a finding that no valid line of reasoning and permissible inferences could possibly lead rational persons to the conclusions reached by the jury. Matthews, supra. The JNOV should not be granted merely when there is a preponderance of evidence for the mover. In making this determination, the trial court should not evaluate the credibility of the witnesses, and all inferences or factual questions should be resolved in favor of the non-moving party. Anderson v. New Orleans Public Service, Inc., 583 So.2d 829 (La.1991); Craighead v. Preferred Risk Mutual Insurance Company, 33,731 (La.App.2d Cir.8/25/00), 769 So.2d 112, writ denied, 2000-2946 (La.12/15/00), 777 So.2d 1230.
As noted by this court in Gibson v. Bossier City General Hosp., 594 So.2d 1332 (La.App. 2d Cir.1991), the scales are clearly tilted in favor of | fithe survival of the jury’s verdict, but the trial court is left with a breadth of discretion which varies with the facts and events of each case. What the appellate court reviews is the decision of the trial judge, who has attempted to balance the great deference afforded to the jury’s verdict against his obligation to insure that substantial justice was accomplished. Thus, in reviewing the trial court’s determination regarding whether to grant a JNOV or new trial, the appellate court’s review is limited to whether the trial court committed manifest error in its denial of the motions. Gibson, supra.
We conclude that the trial court was not manifestly erroneous in denying the Motion for JNOV. The evidence is of such quality and weight that reasonable persons might reach differing conclusions. Thus, a reasonable basis exits for the jury’s verdict. The standard of review demands deference to the trier of fact.
CONCLUSION
For the reasons expressed above, we affirm the decision of the trial court. Costs to appellants.
AFFIRMED.

. We do not know whether the jury decided that Adger was simply not negligent, or whether the jury determined that even if any negligence occurred, it was not the cause in fact of the accident.